|  | AUSA: | Hank Moon | Telephone: (313) 226-0220 |
| --- | --- | --- | --- |
| AO 93 (Rev. 11/13) Search and Seizure Warrant | Special Agent: | David Miller | Telephone: (313) 965-5009 |

# UNITED STATES DISTRICT COURT
### for the
Eastern District of Michigan

| In the Matter of the Search of | ) | |
| --- | --- | --- |
| *(Briefly describe the property to be searched* | ) | Case: 2:19-mc-50186 - 2 |
| *or identify the person by name and address)* | ) | Case No. Assigned To : Steeh, George Caram |
| Microsoft Corporation (Hotmail) Account more fully | ) | Assign. Date : 2/7/2019 |
| described in Attachment A. | ) | IN RE: SEALED MATTER (CMC) |
| | ) | |

## SEARCH AND SEIZURE WARRANT

To:     An authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____ Eastern _____ District of _____ Michigan _____ .
*(identify the person or describe the property to be searched and give its location)*:

See ATTACHMENT A.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See ATTACHMENT B.

**YOU ARE COMMANDED** to execute this warrant on or before _____ *(not to exceed 14 days)*
☑ in the daytime 6:00 a.m. to 10:00 p.m.   ☐ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to  the presiding United States Magistrate Judge on duty  .
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for ____ days *(not to exceed 30)*   ☐ until, the facts justifying, the later specific date of _____

Date and time issued:   February 7, 2019   3:18 pm

_____
*Judge's signature*

City and state:   Detroit, MI

R. Steven Whalen          U. S. Magistrate Judge
*Printed name and title*

## <u>Affidavit in support of an application for a search warrant</u>

I, David Miller, having been duly sworn, depose and state:

1.     I am a Special Agent with the Federal Bureau of
Investigation and have been since September 2017. I am currently
assigned to a notional security squad and have training and experience
in the investigation and apprehension of individuals involved in
possible violations associated with financial crime, along with items
that may be considered evidence in the commission of those violations. I
have training and experience in the investigation of money laundering
through financial institutions and trade-based money laundering. This
affidavit is written in support of three warrants involving the same
conduct. These warrants cover the following accounts:

2.     Warrant one will be served to Oath, Inc., a subsidiary of
Verizon. Oath serves as the umbrella company over its digital content
subdivisions, including AOL. AOL is a web portal and online service
provider, including electronic mail services. This warrant will seek to
obtain records related to the e-mail account: **kainali@aol.com.**

3.     Warrant two will be served to Google LLC. Google LLC is an
American multinational technology company that specializes in

Internet-related services and products, including online advertising technologies, search engine, cloud computing, and the electronic mail service known as "Gmail." This warrant will seek to obtain records related to the e-mail accounts: **malekt.sos@gmail.com, edkain.gss@gmail.com, halasiblani.sos@gmail.com, alidourra.sos@gmail.com, nosdonya.sos@gmail.com, christinak.sos@gmail.com**, **tyler@shipsweetieboy.com** and **katie@shipsweetieboy.com.**

4.    Warrant three will be served to Microsoft Corporation. Microsoft is a multinational technology company that develops, manufactures, licenses, supports, and sells computer software, electronics, personal computers, and related services, including the electronic mail service known as "Hotmail." This warrant will seek to obtain records related to the e-mail account: **malektahan@hotmail.ca.**

5.    The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b) (1) (A), and 2703(c) (1) (A) to require Oath, Inc., Google, Inc., and Microsoft Corporation to disclose to the government records and other

2

information in its possession pertaining to the subscriber or customer associated with the aforementioned email accounts. Based on the following, there is probable cause to believe that these accounts contain evidence, fruits, and instrumentalities of violations of 18 U.S.C. § 542 (entry of goods by means of false statements), 18 U.S.C. § 2312 (transportation of stolen vehicles), 18 U.S.C. § 1343 (wire fraud), 18 U.S.C. § 1956 (money laundering), and 18 U.S.C. § 371 (conspiracy).

6.     The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents/officers and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## PROBABLE CAUSE

7.     Ali Kassem KAIN (hereinafter, "KAIN") operates a freight forwarding business headquartered in Detroit, Michigan. KAIN facilitates the shipment of vehicles and other goods throughout the United States and internationally. KAIN currently operates and serves as the Resident Agent of Specialized Overseas Shipping, Inc. (hereinafter, "SOS"), a freight forwarding business that he opened after

3

a 2011 civil settlement with the U.S. Attorney's Office for the Southern District of New York caused him to close his then freight forwarding company, Global Shipping Services, Inc. SOS operates primarily in the United States, Canada, and West Africa.

8.     Agents conducted surveillance of SOS's operations on 6425 Tireman Avenue in Detroit, Michigan, on multiple days between May 2018 and January 2019. Consistent with records obtained for SOS, agents saw between forty and fifty vehicles at a time in various states of disrepair located in the lot on the west side of the property. Surveillance also showed vehicle hauling trucks being loaded with approximately ten vehicles at a time in this lot and transported off of the property.

9.     As described below, there is probable cause to believe that KAIN and others are bringing stolen cars into the United States from Canada, and then shipping these stolen cars to West Africa. The investigation has revealed that KAIN and his coconspirators appear to conduct much of their business over email. Records indicate that KAIN is the owner of e-mail address **kainali@aol.com**. Records obtained via court order show that, from this account, he corresponds directly with his employees and companies in the United States and Canada involved

4

in purchasing used and salvaged vehicles and exporting them to West Africa. KAIN also uses this address to correspond directly with individuals and companies in West Africa.

10.    SOS employs several other workers, including members of KAIN's family, believed to be involved in these alleged violations. Ahmad "Ed" Kain (hereinafter, "ED") is KAIN's brother. According to ED's border crossing interviews and confirmed by surveillance, ED assists KAIN in the day-to-day operations of SOS, including regularly traveling to Canada to transport vehicles back into the United States. ED stated in a CBP interview on January 3, 2019, that he is also the owner and operator of Wayne Auto Deals, a used auto dealership located in Wayne, Michigan. ED uses the email address **edkain.gss@gmail.com**. From June 1, 2018, through July 31, 2018, KAIN (**kainali@aol.com**) and ED (**edkain.gss@gmail.com**) exchanged 83 e-mails.

11.    Ali Adnan Kain (hereinafter, "ADNAN") is Ali KAIN's cousin and the owner/operator of Kain Import Export Inc. and Kain Inc.: both businesses are registered and located in Windsor, Canada (ADNAN is a Canadian citizen). Bank records show wire transactions between

5

KAIN/SOS and ADNAN. For example, in February 2014, SOS wired Kain Import Export Inc. $38,350 referencing inland transportation.

12.    On December 16, 2018, ADNAN presented himself for inspection at the Detroit Windsor Tunnel. ADNAN informed CBP officials that he was driving to ED's house. Agents found a number of WhatsApp text messages between ED and ADNAN on ADNAN's cell phone. The conversations included references to vehicles, prices, VINs, titles, and images of shipping documents. These shipping documents contained references to KAIN, SOS, and Go East Logistics.

13.    On January 7, 2019, ADNAN again presented himself for inspection at the Detroit Windsor Tunnel. In this interview, ADNAN told law enforcement about Go East Logistics, a shipping company located in Canada. ADNAN said that Go East Logistics is operated by ED; however, because ADNAN and his wife are Canadian citizens, it was easier for them to register the company in their names.

14.    According to interviews with a former SOS coworker (*see* paragraphs 20–25), Malek TAHAN (hereinafter, "TAHAN") is an employee of SOS and manages SOS's vehicle holding lot in Quebec, Canada. TAHAN is also responsible for transporting vehicles from

6

Canada into the United States through ports of entry located in upstate New York. According to the results of a 2703d Order, the email address **malekt.sos@gmail.com** is associated with the name Malek TAHAN. From June 1, 2018, through July 31, 2018, KAIN (**kainali@aol.com**) and TAHAN (**malekt.sos@gmail.com**) exchanged 59 e-mails. Records also show KAIN (**kainali@aol.com**) was included as a Carbon Copied (cc) recipient of an e-mail sent from **malektahan@hotmail.ca**, believed to be TAHAN's Canadian e-mail address.

15. To date, FBI Albany Division, in conjunction with U.S. Customs and Border Patrol, have identified at least eighteen vehicles (the number continues to rise with further investigation) stolen in Canada that SOS has imported or attempted to import into the United States between May of 2017 and November of 2018, in violation of 18 U.S.C. § 2312 (transportation of stolen vehicles). Agents identified the specific VIN numbers for these eighteen vehicles. Within twenty-four hours of a vehicle being stolen, the organization believed to be committing much of the auto theft is able to "re-VIN" a vehicle, produce fake paperwork, send the paperwork to a broker, and get the vehicle to a U.S. port of entry. This speed enables the organization to get the

7

vehicle through inspection before the theft is officially reported and
registered in law enforcement databases.

16.    SOS works with a vehicle transportation company, Sweetie
Boy Transport, to physically bring the stolen vehicles from Canada into
the United States. Records accompanying the vehicles into the United
States show that SOS worked with Sweetie Boy to bring all eighteen
stolen vehicles from Canada into the United States.

17.    Records show that KAIN is in direct communication with the
Sweetie Boy team: KAIN (**kainali@aol.com**) exchanged 34 emails with
Tyler McCormick (**tyler@shipsweetieboy.com**), the Resident Agent of
Sweetie Boy Transport from June 1, 2018, through July 31, 2018.
Further, KAIN (**kainali@aol.com**) exchanged 39 emails with Katie
Lovell (**katie@shipsweetieboy.com**), another Sweetie Boy employee,
during that same time period. Finally, bank records show that from
December 2014 through May 2018, SOS sent at least twelve wire
transfers to Sweetie Boy Transportation in Virginia totaling
approximately $212,700.00. The wires included notes from the
originator (SOS) to the beneficiary (Sweetie Boy), which included
transportation payments, container ocean freight charges, and freight

charges.

18.    In March 2017, U.S. Customs and Border Patrol learned through an inspection that TAHAN, the SOS employee who manages SOS's vehicle holding lot in Quebec, was providing Sweetie Boy Transport with two sets of documentation for each vehicle brought from Canada into the U.S. One set was given to CBP when the vehicles entered the United States from Canada, and the other accompanied the vehicles on the ship to its final destination in West Africa. The set for CBP is believed to have contained fraudulent information in order to save on bonding fees, in violation of 18 U.S.C. § 542 (Entry of goods by means of false statements). The set of documentation for the ship—the "dock receipts"—contained the accurate information so that each vehicle can be matched to the correct recipient upon arrival. An interview of a Sweetie Boy driver shortly after the March 2017 inspection revealed that this process has changed, and drivers now receive the dock receipts via e-mail or via fax after entering the U.S., circumventing the inspections—thus, agents at the port of entry will not see both sets of documents.

9

19. In October 2018, agents interviewed a former co-worker (hereinafter, "Interviewee 1") of TAHAN. Agents asked Interviewee 1 why SOS would ship cars with two sets of documentation. According to Interviewee 1, the two sets of documents with different information were used to save money. The government (U.S. Customs and Border Patrol) charges freight forwarding companies a "bond" for each individual shipping company for whom they are forwarding a vehicle. This bond can be anywhere between $35 and $80. Trucks often carry vehicles shipped by several different shippers. In order to avoid paying several bonds on each load, freight forwarding companies will sometimes use paperwork claiming that all of the vehicles belong to one shipper and thus pay only one bond.

20. Further, Interviewee 1 confirmed that the two sets of dock receipts were sent to TAHAN from the SOS office in Detroit. Interviewee 1 stated that ED demanded this procedure.

21. Agents also spoke with Interviewee 1 about the stolen vehicles. In 2015, a car hauler (the actual truck full of vehicles) was arrested with a stolen vehicle from the lot managed by TAHAN. A week later, a second car hauler, was also found during an inspection at the

10

port of entry carrying a stolen vehicle from TAHAN's lot. Interviewee 1 confronted TAHAN, who managed the yard, on why he was not verifying the vehicles (which would uncover that the vehicles were stolen). According to Interviewee 1, these stolen vehicles were consolidated with other, non-stolen vehicles under a single exporter to save on bond fees, as explained above. According to Interviewee 1, the exporter did not know that SOS was adding additional vehicles to its paperwork to save bond fees, nor did the exporter know that these additional vehicles were stolen.

22.   Additionally, Interviewee 1 learned that an FJ Cruiser still located at the yard was stolen due to a defect on the VIN sticker on the vehicle door. TAHAN would not provide Interviewee 1 with the name and phone number of the buyer for these stolen vehicles.

23.   The buyer of the FJ Cruiser was from Laval, Canada, and TAHAN claimed he was a "good guy." The exporter/buyer then removed the FJ Cruiser from the yard after TAHAN told the exporter that the yard needed documentation to prove ownership of the vehicle because it was listed as stolen. Interviewee 1 said that he suspected TAHAN

11

accepted bribes to turn a blind eye to stolen vehicles; otherwise, he would not have allowed that FJ Cruiser to be brought to the lot.

24.     Interviewee 1 advised that there were further red flags that indicated that vehicles were stolen. An example of a red flag is when there was an exporter on a dock receipt that had mostly older, low value vehicles, but there were also two new vehicles. Another red flag for stolen vehicles is when vehicles are shipped the day before a ship's departure. SOS often uses Sallaum Shipping to transport vehicles to West Africa, and Sallaum's departure dates are available on their website. According to Interviewee 1, SOS times their deliveries of vehicles to Sallaum so they arrive at the port on the cut-off date for shipping. With this tight timeline, combined with the speed the vehicles are stolen and processed (*see* paragraph 16), the vehicles are not reported stolen until after they are shipped.

25.     Once KAIN transported the eighteen stolen vehicles from Canada into the United States (along with other, non-stolen vehicles), SOS shipped those vehicles to companies in West Africa, among others. Shipping records for SOS show that in 2018 alone, SOS shipped more than 1,000 vehicles; since 2013, SOS has shipped approximately 10,000

12

vehicles. The overwhelming majority of these vehicles are shipped to West African nations such as Benin, Togo, and Nigeria. In return, companies in West Africa wired money back to KAIN. Information obtained through subpoenas show that, in one of KAIN's bank accounts, he received more than $10 million dollars in transfers from companies in West Africa between August 2011 and August 2018, including more than $2.3 million dollars from August 17, 2017, through July 20, 2018.

26.    In June 2018, the FBI began working with a Confidential Human Source (hereinafter, "CHS 1"). CHS 1 has a three-year history of reliable reporting, and previous reporting by CHS 1 has been repeatedly corroborated in multiple FBI investigations. For these reasons, your affiant believes that information provided by CHS 1 is reliable. In June 2018, CHS 1 informed the FBI that KAIN is conducting shipping operations to Africa and Lebanon through shipping lines (companies) located on the eastern seaboard.

27.    CHS 1 has personally engaged in phone and e-mail communications with KAIN regarding the shipment of vehicles to Africa. CHS 1 e-mailed KAIN about personally sending vehicles from the United States to Africa. KAIN responded to CHS 1 from

13

**kainali@aol.com** and told CHS 1 that he should use the following email addresses to coordinate the shipment of vehicles to West Africa: **halasiblani.sos@gmail.com, alidourra.sos@gmail.com, nosdonya.sos@gmail.com,** and **christinak.sos@gmail.com**.

28.     Based on the foregoing information, it appears that financial transactions are being used to (1) promote the specified unlawful activity of interstate or foreign transportation of stolen vehicles; and (2) to conceal or disguise the nature, source, ownership, and control of the proceeds of this specified unlawful activity. The stolen vehicles are intermingled with the company's apparently legitimate business, such that the proceeds from the unlawful activity are disguised as proceeds of the legitimate activity. Therefore, there is probable cause to believe that KAIN is using vehicles stolen in Canada and shipped to West Africa, along with other vehicles shipped to West Africa, to launder monetary instruments, in violation of 18 U.S.C. § 1956.

## CONCLUSION

29.     Based on the forgoing, I request that the Court issue the proposed search warrants.

30.    This Court has jurisdiction to issue the requested warrant
because it is "a court of competent jurisdiction" as defined by 18 U.S.C.
§ 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A), & (c)(1)(A). Specifically, the
Court is "a district court of the United States . . . that – has jurisdiction
over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).



David Miller
Special Agent, FBI

Sworn to before me and signed in my
presence and/or by reliable electronic means

Honorable R. Steven Whalen
United States Magistrate Judge

Dated:    February 7, 2019

15

## ATTACHMENT A

### Property to Be Searched

This warrant applies to information associated with the Hotmail (Microsoft Corporation) accounts:

- **malektahan@hotmail.ca**

stored at premises owned, maintained, controlled, or operated by Microsoft Corporation a company located in Redmond, Washington.

16

## ATTACHMENT B

### Particular Things to be Seized

## I.   Information to be disclosed by Microsoft Corporation

To the extent that the information described in Attachment A is

within the possession, custody, or control of Microsoft Corporation,

regardless of whether such information is stored, held or maintained

inside or outside of the United States, and including any emails,

records, files, logs, or information that has been deleted but is still

available to Microsoft Corporation, or has been preserved pursuant to a

request made under 18 U.S.C. § 2703(f), Microsoft Corporation is

required to disclose the following information to the government for

each account or identifier listed in Attachment A, from January 1, 2015,

through the present:

a.   The contents of all emails associated with the account,

including stored or preserved copies of emails sent to and from the

account, draft emails, the source and destination addresses associated

with each email, the date and time at which each email was sent, and

the size and length of each email;

17

b.     All records or other information regarding the identification of the account, to include full name, physical address, telephone numbers and other identifiers, records of session times and durations, the date on which the account was created, the length of service, the IP address used to register the account, log-in IP addresses associated with session times and dates, account status, alternative email addresses provided during registration, methods of connecting, log files, and means and source of payment (including any credit or bank account number);

c.     The types of service utilized;

d.     All records or other information stored at any time by an individual using the account, including address books, contact and buddy lists, calendar data, pictures, and files;

e.     All records pertaining to communications between the Provider and any person regarding the account, including contacts with support services and records of actions taken; and

f.     For all information required to be disclosed pursuant to this warrant, the physical location or locations where the information is stored.

18

## II. Information to be seized by the government

All information described above in Section I that constitutes fruits, evidence, or instrumentalities of violations of 18 U.S.C. § 542 (entry of goods by means of false statements), 18 U.S.C. § 2312 (transportation of stolen vehicles), 18 U.S.C. § 1343 (wire fraud), 18 U.S.C. § 1956 (money laundering), and 18 U.S.C. § 371 (conspiracy) involving the user IDs identified in Attachment A since January 1, 2015, including, for each user ID identified in Attachment A, information pertaining to the following matters:

(a) Emails, photographs, communications, discussions, or any other evidence involving the interstate transportation of stolen vehicles, false statements, wire fraud, or money laundering, including preparatory steps taken in furtherance of these crimes and discussions following the crimes;

(b) Evidence indicating how and when the Microsoft Corporation (Hotmail) account was accessed or used, to determine the chronological and geographic context of account access, use, and events relating to the crime under

19

investigation and to the Microsoft Corporation (Hotmail) account user;

(c) Evidence indicating the Microsoft Corporation (Hotmail) account user's state of mind as it relates to the crime under investigation; and

(d) The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s).

20

## CERTIFICATE OF AUTHENTICITY OF DOMESTIC BUSINESS
## RECORDS PURSUANT TO FEDERAL RULE OF EVIDENCE 902(11)

I, _____, attest, under penalties of perjury under the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this declaration is true and correct. I am employed by Microsoft Corporation, and my official title is _____. I am a custodian of records for Microsoft Corporation. I state that each of the records attached hereto is the original record or a true duplicate of the original record in the custody of Microsoft Corporation and that I am the custodian of the attached records consisting of _____ (pages/CDs/megabytes). I further state that:

a.      all records attached to this certificate were made at or near the time of the occurrence of the matter set forth, by, or from information transmitted by, a person with knowledge of those matters;

b.      such records were kept in the ordinary course of a regularly conducted business activity of Microsoft Corporation; and

c.      such records were made by Microsoft Corporation as a regular practice.

I further state that this certification is intended to satisfy Rule 902(11) of the Federal Rules of Evidence.

_____          _____

Date                                                    Signature

21

AO 106 (Rev. 04/10) Application for a Search Warrant

Special Agent:

AUSA:  Hank Moon     Telephone:  (313) 226-0220
David Miller      Telephone:  (313) 965-5009

# UNITED STATES DISTRICT COURT
### for the
### Eastern District of Michigan

| In the Matter of the Search of | ) | |
|---|---|---|
| *(Briefly describe the property to be searched* | ) | Case: 2:19−mc−50186 - 2 |
| *or identify the person by name and address)* | ) | Assigned To : Steeh, George Caram |
| | ) Case No. | Assign. Date : 2/7/2019 |
| Microsoft Corporation (Hotmail) Account more fully | ) | IN RE: SEALED MATTER (CMC) |
| described in Attachment A. | ) | |
| | ) | |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See ATTACHMENT A.

located in the _____ Eastern _____ District of _____ Michigan _____, there is now concealed *(identify the person or describe the property to be seized)*:

See ATTACHMENT B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 542; 18 U.S.C. § 1956 | Entry of goods by means of false statements; Money laundering |
| 18 U.S.C. § 2312 and 18 U.S.C. § 371 | Transportation of stolen vehicles; Conspiracy |

The application is based on these facts:

See attached AFFIDAVIT.

☐ Continued on the attached sheet.

☐ Delayed notice _____ days (give exact ending date if more than 30 days: _____ ) is requested
under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

David Miller, Special Agent, FBI
*Printed name and title*

Sworn to before me and signed in my presence
and/or by reliable electronic means.

Date: _____ February 7, 2019 _____

*Judge's signature*

City and state:  Detroit, MI

R. Steven Whalen     U. S. Magistrate Judge
*Printed name and title*

AO 93 (Rev. 11/13) Search and Seizure Warrant (Page 2)

| Return | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of : | | |
| Inventory of the property taken and name of any person(s) seized: | | |

## Certification

   I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.


Date: _____            _____
                                                         *Executing officer's signature*

                                                         _____
                                                         *Printed name and title*