| USAO File Number: | 2018R00729 | AUSA: | Jerome Gorgon | Telephone: (313) 226-9100 |
|---|---|---|---|---|
| AO 106 (Rev. 04/10) Application for a Search Warrant | | Special Agent: | Jessica Knickerbocker | Telephone: (313) 965-2323 |

# UNITED STATES DISTRICT COURT
### for the
Eastern District of Michigan

In the Matter of the Search of
*(Briefly describe the property to be searched
or identify the person by name and address)*

Records Seized During October 13, 2021 Search Warrant,
More Fully Described In Attachment A.

)
)
)
)
)
)

Case No.  19-mc-50186-6

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See ATTACHMENT A.

located in the _____ Eastern _____ District of _____ Michigan _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See ATTACHMENT B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 26 U.S.C. § 7206 | Fraud and false statements |
| 18 U.S.C. § 542 | Entry of goods by means of false statements |

The application is based on these facts:

See attached AFFIDAVIT.

- ☑ Continued on the attached sheet.
- ☐ Delayed notice _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Jessica Knickerbocker, Special Agent, IRS
*Printed name and title*

Sworn to before me and signed in my presence
and/or by reliable electronic means.

Date: _____ August 31, 2023 _____

City and state: Detroit, Michigan

*Judge's signature*

David R. Grand          U. S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, Jessica Knickerbocker, a Special Agent with the Internal Revenue Service and a Task Force Officer with the Federal Bureau of Investigation, being duly sworn, hereby depose and state as follows:

## EXECUTIVE SUMMARY

Ali Kassem Kain ("Kain") operates Specialized Overseas Shipping ("SOS"), a freight forwarding business located in Detroit, Michigan. Evidence obtained by United States Customs and Border Protection ("CBP") during attempted border crossings and pursuant to a federal search warrant of Kain's, SOS's, and other participants' email accounts, shows that Kain and SOS are importing vehicles from Canada and are providing fraudulent paperwork to CBP at the border, in violation of 18 U.S.C. § 542 (entry of goods by means of false statements).

A related investigation into Kain and his businesses, primarily SOS, shows that for the calendar years 2015 through and including 2021, there are significant inconsistencies in his personal and business tax filings as compared with his personal and business financial information (bank records, credit card transactions, etc.). An analysis of Kain's business and personal income tax returns, and business and personal bank account activity, obtained via legal process, shows significant discrepancies between his financial transactions and reported income tax information, and federal taxes paid. Based on this evidence, on October 13, 2021, search warrants

1

were executed at Kain's business address, SUBJECT PREMISES 1, and his personal residence, SUBJECT PREMISES 2. *See* 19-mc-50186-5. Items seized in the execution of these search warrants included a voluminous amount of electronic data. Upon a cursory review of this electronic evidence, two databases, previously unknown to your affiant, were discovered: 1) a QuickBooks database which appears to have been maintained by Kain and which appears to have recorded all of SOS's income from 2006 to 2021, and 2) a payroll database using a software package called Finger Tec. Under the October 2021 search warrants, the government was permitted to seize and search all items constituting evidence, fruits, contraband, or instrumentalities of violations of 26 U.S.C. § 7206 (fraud and false statements related to tax disclosures and returns) and 18 U.S.C. § 542 (entry of goods by means of false statements) from January 1, 2015 to present (which, in this case, was October 2021), including records, information, financial documents, and electronically stored information. *Id*. at Attachment B.

As described further below, a cursory review of Kain's QuickBooks and Finger Tec databases, as well as additional evidence and witness statements, demonstrates that there is probable cause that the evidence obtained from the execution of the October 2021 searches, including the QuickBooks and Finger Tec databases, contains evidence, contraband, fruits, and/or instrumentalities of violations of 26 U.S.C. § 7206 (fraud and false statements related to tax disclosures and returns) and 18 U.S.C. § 542 (entry of goods by means of false statements), as well as 26 U.S.C.

§ 7202 (failure to collect and pay tax), 50 U.S.C. § 1705 (International Emergency

Economic Powers Act), and 21 U.S.C. § 1906 (Foreign Narcotics Kingpin Designation

Act) from at least 2006 to the present.

Specifically, a cursory review has revealed that Kain's QuickBooks and Finger

Tec databases contain evidence of additional criminal conduct from a longer period.

For example, Kain's QuickBooks database contains contemporaneous recordation of

SOS's business transactions for the calendar years 2006 through and including 2021,

which are materially different than the business and income he reported to the

Internal Revenue Service for these years, in violation of Title 26 United States Code,

section 7206(1), revealing an ongoing course of conduct by Kain to systematically

underreport his taxable income from 2006 through 2021.  Further, Kain's

QuickBooks database also includes evidence that Kain, SOS, and other shipping

companies previously owned by Kain, regularly did business with individuals or

entities listed on the U.S. Department of Treasury's Specially Designated Nationals

and Blocked Persons list pursuant to the Foreign Narcotics Kingpin Designation Act

and the Foreign Narcotics Kingpin Sanctions Regulations, 31 C.F.R. Part 598, in

violation of 21 U.S.C. § 1902 et seq.  Kain's Finger Tec database – which is marketed

as access control and time attendance software – appears to contain time and wage

information recorded by Kain for his SOS employees.  Based on information

obtained during the course of this investigation, including recent testimony by a

former SOS employee, I believe that there is probable cause that the Finger Tec

database contains time and wage information that is materially different than the time and wage information Kain reported to the Internal Revenue Service, for the calendar years 2015 through and including 2021, in violation of Title 26 United States Code, sections 7202 and 7206(1) and (2).

## INTRODUCTION AND AGENT BACKGROUND

I make this affidavit in support of an application for a search warrant to retain and search particular electronic evidence initially seized pursuant to the execution of search warrants on October 13, 2021 at the following locations: the offices of Specialized Overseas Shipping Inc. located at 6425 Tireman, Detroit, Michigan 48204 (hereinafter referred to as **"SUBJECT PREMISES 1")** and the personal residence of Ali Kain located at 16332 Horseshoe Drive, Northville, Michigan 48168, (hereinafter referred to as **"SUBJECT PREMISES 2") (hereinafter, the "SEIZED RECORDS").**

1.    I am a Special Agent with the Internal Revenue Service, Criminal Investigation, and have been so employed since August of 2005. As a Special Agent, I have completed training at the U.S. Federal Law Enforcement Training Center in Glynco, Georgia, which covered all aspects of financial investigation, including search and seizure, violations of the Internal Revenue Laws, and Internal Revenue Service policies and procedures. My responsibilities include the investigation of possible criminal violations of the Internal Revenue Laws (26 U.S.C.), the Bank Secrecy Act (31 U.S.C.), the Money Laundering Control Act (18

4

U.S.C.), and related offenses. During my employment as a Special Agent with the IRS, I have directed or assisted in investigations concerning money laundering, income tax, and Bank Secrecy Act violations. These investigations focused on individuals deriving income from a mix of legal and illegal sources. I have participated in the execution of search warrants involving the seizure of records relating to the concealment of assets and proceeds from fraud. I have received extensive training in accounting and financial investigation techniques and have participated in numerous training classes and seminars on money laundering, the Bank Secrecy Act, and asset forfeiture.

2.    On October 13, 2021, federal search warrants were executed at Kain's business location and personal residence. The facts set forth below established probable cause to believe Kain filed false personal and business tax returns for the years 2015, 2016, 2017, and 2018. Further, the facts set forth below also established probable cause to believe that since January of 2015, Kain and employees of SOS, were submitting fraudulent dock receipts to U.S. Customs and Border Protection. Based on my training and experience, and the facts as set forth in this affidavit, there was probable cause to believe that Kain violated Title 26, United States Code, Section 7206 (fraud and false statements) and Title 18, United States Code, Section 542 (entry of goods by means of false statements).

3.    A cursory review of the SEIZED RECORDS indicates that Kain has

been underreporting SOS income for the calendar years prior to 2015.  In my

training and experience, taxpayers that underreport business income to the IRS

often engage in on ongoing pattern of this conduct over many years.  Evidence that

Kain has been engaging in a pattern of underreporting taxable business income for

SOS since the inception of his freight forwarding business is relevant to my

investigation of Kain and SOS for the calendar years 2015 through 2021.

4.     A cursory review of the SEIZED RECORDS, specifically Kain's

QuickBooks database, also indicates that Kain may have been conducting business

with individuals listed on the U.S. Department of Treasury's Foreign Narcotics

Kingpin list, in violation of the Foreign Narcotics Kingpin Designation Act, and 21

U.S.C. § 1902 et seq.  Specifically, Kain's QuickBooks database appears to contain

invoices associated with all of SOS's customers with a date range going back until

at least 2006.  The files appear to have been maintained by Kain, and or his

employees, since he started his business as a freight forwarder, and appear to

contain invoices from individuals or entities on the Foreign Narcotics Kingpin list,

including Ali Kharoubi and his company the Ellissa Group.

5.     Since executing the October 2021 search warrants, I also have learned

additional facts that substantiate my belief that Kain has committed a variety of tax

crimes.  Subsequent witness interviews have revealed that Kain paid SOS

employees a significant portion of their wages in cash, which he did not report to

the Internal Revenue Service, and from which he did not withhold the required

statutory tax.  According to witnesses' statements, and other evidence, employees' hours were tracked using the Finger Tec database, which was not provided to Kain's payroll tax return preparer who prepared the employment tax returns for SOS.  Instead, to prepare and pay SOS's payroll tax, Kain's Return Preparer was given wage and time figures that were substantially less than the true numbers recorded in the Finger Tec database.  The Return Preparer was not given any information regarding Kain's cash payments to the SOS employees.  Accordingly, these cash payments, recorded in the Finger Tec database, were not reported as wages to the Internal Revenue Service, and Kain failed to collect withholdings taxes on those wages.

6.    Due to the nature of the alleged offenses, I request authority to search and retain the SEIZED RECORDS described in Attachment A for evidence, instrumentalities, contraband, or fruits of these crimes, and retain the evidence further described in Attachment B.

7.    The information in this affidavit comes from numerous sources including, but not limited to, my own personal observations and participation in this investigation and my review and analysis of oral and written reports and documents. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## PROBABLE CAUSE

*Background*

8.      There are two related investigations involving Ali Kain. First, the IRS

is conducting a criminal investigation with the Federal Bureau of Investigation in

Detroit and Albany, New York, into Kain and his business, SOS, for submitting

fraudulent documents to U.S. Customs and Border Protection. Second, The IRS is

conducting a criminal investigation of Ali Kain's personal and business tax returns

for the years 2015, 2016, 2017, and 2018. The IRS is working jointly with the

Canada Revenue Agency (CRA) on this investigation, which involves possible

inflated business expenses and unreported income. Both investigations focus on

Kain and his businesses, primarily Specialized Overseas Shipping.

9.      Kain is the Resident Agent of SOS, and through SOS, facilitates the

shipment of vehicles and other goods throughout the United States and

internationally. Kain also owns two additional businesses—SOS Transportation,

Inc. and SOS Realty, LLC, both co-located with SOS at SUBJECT PREMISES 1.

10.     In 2012, Kain reached a civil settlement with the government in the

Southern District of New York (USAO SDNY). Case No. 1:11-cv-09186-PAE.

According to the Stipulation and Order of Settlement filed with the Court on May

16, 2012, Kain acknowledged that he had "been made aware of the allegations of a

scheme to launder the proceeds of violations of IEEPA and proceeds of narcotics

transactions through the United States used car market as set forth in the Complaint, including through the purchase of used cars in the United States, their subsequent shipment to West Africa, their sale, the commingling of the proceeds of those sales with narcotics proceeds, and transportation of those funds into Lebanon; and allegations that Hezbollah members and supporters are involved at various points in the money laundering scheme." *Id.* ECF No. 248 ¶ 1.

11. As a result of the civil settlement, Kain was ordered to forfeit "all funds on deposit in the Comerica Bank Accounts, held in the name of Global Shipping Services," Kain's business at the time of the December 2011 compliant filed by the District Court for the Southern District of New York. Additionally, Kain was ordered that he "shall not enter into any transactions with any party who he has reason to believe is affiliated with Hezbollah." *Id.* ¶¶ 2-3.  Kain also agreed to implement anti-money laundering "know your customer" due diligence policies, including the retention of all records for "transactions involving the shipment of vehicles to a foreign country and/or international transfers of funds (both sent and received) for five years, including know-your-customer and due diligence records." *Id.* ¶ 7.

12. SOS operates primarily in the United States, Canada, and West Africa. Global Shipping Services also operated in the United States and West Africa.

13. It has been the assessment of the U.S. law enforcement and intelligence

community for the past twenty or more years that some foreign terrorist organizations use international shipping routes between the United States and West Africa as a source of funding and money laundering for their global operations. One of the methods most used by these organizations is the purchase, transportation, and sale of used and salvaged vehicles, which are purchased from private sellers, scrap yards, and at auction within the United States, shipped to West Africa, and resold at an inflated value. Proceeds from these sales are then commingled with money obtained from unlawful activities in which many of these organizations engage (often drug trafficking). In some cases, the vehicles being shipped have been stolen from their rightful owners. In order to transport these vehicles from the United States to West Africa, sellers use freight forwarding and export companies—like Global Shipping Services and SOS.

*The investigation into false documents*

14.    As will be detailed later in this affidavit, witness statements, subpoenaed documents, email search warrant results, and the inspection and comparison of seized documents with other evidence, indicate that SOS often submitted dock receipts that were altered and suspected to be fraudulent to U.S. Customs and Border Protection (CBP) when importing and exporting vehicles through third- party carriers. As described by witnesses and confirmed by a review of the records obtained in this case, when importing and exporting vehicles, SOS

10

repeatedly submitted fraudulent dock receipts to CBP to save on bond fees, obscure the shippers of stolen vehicles,[1] and promote other fraudulent activity.

15.     In this context, SOS operates as a freight forwarder/vehicle broker: SOS is responsible for filling out the dock receipts; booking the shipment with the transportation company (the company that physically transports the vehicles to the port, like Sweetie Boy Trucking, discussed below); and booking the shipment with the carrier (the company that transports the vehicle from the port overseas and completes the dock receipts). Records provided by CBP and records obtained via email search warrant (discussed in detail below), accompanying hundreds of vehicles from Canada into the U.S. in total—and all twenty-four stolen vehicles discussed in footnote 1—list SOS as the freight forwarding company.

16.     In March of 2017, CBP inspected SOS's vehicle holding lot in Canada. Inspecting officers spoke with Malek Tahan, an SOS employee and Canadian resident who managed SOS's Canadian lot. Tahan admitted that he was giving Sweetie Boy Transportation two sets of documentation (also called "dock receipts") for each vehicle. One set was given to CBP when the vehicles entered the United

---

[1] To date, the FBI and CBP have identified and seized at least twenty-four vehicles stolen in Canada that SOS imported or attempted to import into the U.S. between May 2017 and April 2019. And there were likely more, because within twenty-four hours of a vehicle being stolen in Canada, the people responsible for the thefts were able to change the Vehicle Identification Number (VIN) on the stolen vehicle, produce fraudulent paperwork, send the paperwork to a freight forwarding company (in the automobile context, sometimes called a vehicle broker), and transport the vehicle to the U.S. port of entry. This speed likely enabled the organization to move the vehicle through inspection at the U.S. port of entry before the theft was officially reported and registered in law enforcement databases.

States from Canada, and the other set accompanied the vehicles on a ship from the

United States to its final destination, usually in West Africa.[2]

17.   The two sets of documents were different, even though they concerned

the same vehicles: the set for CBP limited the number of recipients in the United

States in order to save on import or "bonding" fees (this false/fraudulent

information violates 18 U.S.C. § 542). The set of dock receipts accompanying the

vehicle on the ship to West Africa contained accurate information so that each

vehicle could be matched to the correct recipient upon arrival. Agents later

interviewed a former SOS co-worker of Tahan (herein after, "Interviewee 1").

Agents asked Interviewee 1 why SOS would ship cars with two sets of

documentation. Interviewee 1 said that two sets of documents with different

information were used to save money: CBP charges freight forwarding companies

a "bond" for each individual shipping company for whom they are forwarding a

vehicle. This bond can be anywhere between $35 and $80. Trucks often carry

vehicles shipped by several different shippers; but to avoid paying several bonds on

each load, freight forwarding companies like SOS will fraudulently claim that all of

---

[2] According to interviews with two trucking companies doing business with SOS, including Sweetie Boy, SOS changed this procedure after the March 2017 inspection. After that inspection, drivers received the dock receipts for the U.S. to Africa leg via e-mail or via fax after entering the U.S. Thus, inspectors at the border between the U.S. and Canada would not be able to see the inconsistencies in the paperwork (dock receipts). Interviews with a second trucking company confirmed this change. Drivers from both trucking companies complained to their leadership about SOS requiring them to carry two sets of documents.

the vehicles belong to one shipper and thus pay only one bond.

18.   Interviewee 1 also told agents that the two sets of paperwork/dock receipts were sent to Tahan from the SOS office in Detroit. Interviewee 1 stated that "Ed" demanded this procedure. "Ed" is known by your affiant to be Ahmad "Ed" Kain, Ali Kain's brother and an SOS employee.

19.   After receiving this information, agents obtained a federal search warrant for email accounts associated with SOS employees, Ali Kain, "Ed" Kain, and several trucking company email accounts, among others. An analysis of these email accounts confirmed that SOS was providing two sets of documents/dock receipts for vehicles coming into the United States from Canada and then shipped overseas from the United States—often to West Africa.

20.   From the analysis of the email search warrant data, your affiant determined that emails with a subject line including the term "mix load" indicated that SOS provided two sets of dock receipts and therefore likely submitted false information to CBP. A review of the email accounts shows that there were more than 950 emails with "mix load" in the email header line between January of 2015 and January of 2019. Here is a typical example:

     a.   On March 6, 2017, Ed Kain emailed ten dock receipts attached as PDF files to Sweetie Boy Transportation and SOS employees Malek Tahan, Christina Kazarian, and Ali Dourra: the subject line was "MIX LOAD # 109/MONTREAL TO BAYONNE." Approximately 30 minutes later, Hala Siblani, another SOS employee, sent an email to Tahan, Ed Kain, and Ali Dourra—all SOS employees—with the

13

subject line, "LOAD# 109 FOR OUR RECORD." This email contained dock receipts as PDF attachments that were different versions of those in the first email—but for the same vehicles. For example, the dock receipt with filename HBL17-2224.pdf listed the exporter as Auto Adan in the intra-SOS email, while the dock receipt for the same vehicle provided to Sweetie Boy listed Ghaddar General Trading. Likewise, the dock receipt with filename HBL17-2227.pdf listed the exporter as El H Auto in the intra- SOS email, while the dock receipt for the same vehicle provided to Sweetie Boy again listed Ghaddar General Trading.

21.     Agents reviewed the electronic copies of paperwork for approximately 50 of these vehicles—imported by SOS from Canada into the U.S., and then exported (or attempted to export) from the U.S. overseas—found in these email accounts and learned that SOS provided two sets of dock receipts for the same vehicles. This was true for both stolen and not stolen vehicles.

22.     A review of these email accounts also shows that SOS changed the name of the "exporter" from Canada on many of the dock receipts for vehicles later identified as stolen—which protected the name of the people stealing the cars if the theft was identified at the border. For example, the dock receipt with filename HBL17-2227.pdf, identified above, was for a 2006 Mercedes, later determined to be stolen in Canada. The exporter identified in SOS's records was El H Auto, while the dock receipt for the same vehicle provided to Sweetie Boy listed Ghaddar General Trading as the exporter. In addition to saving SOS money (by listing Ghaddar General Trading as the exporter for many vehicles on the paperwork provided to CBP at the border), the change of exporter concealed the

14

true exporter for the stolen Mercedes and shielded the exporter from discovery by law enforcement.

23. In another example, a 2017 Acura MDX was determined to be stolen in Canada and subsequently seized by CBP at the border. The exporter on the dock receipt that SOS provided to Sweetie Boy (and which Sweetie Boy later provided to CBP) was A & K Import; however, the vehicle registration that accompanied the stolen Acura indicated the registrant was 9309-4462 Quebec Inc. In SOS records (including Ali Kain's email account), 9309-4462 Quebec Inc. was also listed as the actual exporter, not A & K Import. On April 3, 2018, a U.S. Customs summons was served on SOS for the stolen Acura's associated paperwork. A review of SOS's email accounts show that SOS subsequently requested this paperwork from Sweetie Boy Transportation. It is believed this was done to ensure that SOS provided U.S. Customs the same, fraudulent version that Sweetie Boy provided to CBP rather than the accurate version maintained by SOS (that would show that SOS was providing two copies of dock receipts).

24. On July 25, 2019, agents interviewed the owner of A & K Import, who confirmed that he did buy cars in Montreal, that he used Ali Kain's shipping company, and that Kain's SOS lot was managed by a man with the first name Malek. The owner stated, however, that he never bought an Acura MDX in Canada and shipped it to the U.S.—in contradiction to the dock receipt provided by

15

Sweetie Boy to CBP.

*The tax return investigation*

25.    Kain files his personal tax returns jointly with his wife, Mariam

Beydoun, who is also an employee of SOS. Kain owns three companies all located

at SUBJECT PREMISES 1: Specialized Overseas Shipping (SOS), doing business

as SOS Shipping; SOS Transportation, Inc., and SOS Realty, LLC. A review and

analysis of Kain/Beydoun's personal and business tax filings shows significant

inconsistencies with their personal and business financial transactions. Specifically,

an analysis of Kain/Beydoun's personal tax returns for the years 2015

to 2018 show that they received more funds than what was reported on their

personal tax returns filed with the IRS. Further, an analysis of Kain's business tax

returns and business bank account activity shows significant discrepancies,

primarily unreported income and overstated expenses. Based on my training and

experience, Kain/Beydoun's personal and Kain's business tax returns are not

accurate for the yeas 2015 to 2018, as further explained below.

A.   Kain's business financial information and discrepancies

26.    Kain operates three businesses according to IRS records, all out of

SUBJECT PREMISES 1: Specialized Overseas Shipping (SOS), doing business as

SOS Shipping; SOS Transportation, Inc.; and SOS Realty, LLC. SOS Realty did

not make any tax filings with the IRS from 2016 (the first year after it was formed)

through 2019. Specialized Overseas Shipping reported the following gross receipts
(gross sales) and ordinary income/loss:

|  | 2015 | 2016 | 2017 | 2018 |
|---|---|---|---|---|
| Gross receipts: | $7,961,515 | $3,107,140 | $3,906,245 | $6,945,817 |
| Ordinary income: | $47,197 | $6,176 | $31,414 | -$53,224 |

27.   Based on my review of these tax records, the net profits (ordinary

income/gross receipts) for SOS were unusually low: .59% in 2015; .20% in 2016;

.80% in 2017; and -.77% in 2018 (comparatively, The IRS website states that

average net profit for businesses in the "air, rail, and water transportation" industries

is about 8.47%).

28.   Further, Kain regularly "loans" money from SOS to "shareholders"—

himself—without increasing his wages. Kain reported a personal income from SOS

of $137,221 in 2016, $135,368 in 2017, and $119,600 in 2018. Yet, tax filings show

that Kain received an additional $77,981 in 2016, $63,081 in 2017, and $87,047 in

2018 in "loans"—which were not reported as personal income. Based on my

training and experience, shareholders often take "loans" from their business to

avoid paying taxes. In 2017 an underwriter (lender) asked Kain about SOS's loans

to shareholders and why these loans were taken out. Kain responded:

> this money is a combination of personal withdraws over the past 4 years. Most
> of it was to pay for 2 life insurance policies (over $40k per year), house
> upgrades, among other needs. I had the choice to consider it income and has it

taxed or take it as a loan hoping to get it offset during a highly profitable year. Most likely, we will start partially break it as annual income over the next few years. We have not decided yet. I do not feel bad about, I built this company from ZERO and the early years, I put lots of injections into it.  If any, it shows that the company was and continues to be profitable. I own it 100%.

29.    Bank records also show that SOS received hundreds of thousands of dollars in "loans" from others: $90,500 in 2015, $60,000 in 2016, and $233,000 in 2017. These funds were deposited into SOS's account and referenced "loans" on the memo (subject) line of the deposit. Most of this money came from businesses belonging to Kain's brothers-in-law (who also deposited an additional $120,000 into SOS's account with nothing written on the subject line of the deposit). Based on my review of the documents in this case, there is no evidence that any of these individuals shipped vehicles through SOS, and financial records do not indicate that SOS has made payments on any of these loans. Based on my training and experience, I know that money can be described as "loans" with the recipient never actually paying back the loans—becoming, therefore, improper unreported income.

30.    In addition to loans, tax and bank records show that Kain used his business credit card to pay personal expenses, including personal property taxes and personal IRS tax payments (without reporting these figures as income). Likewise, Kain regularly pays his life insurance premiums from his business bank accounts (without reporting these figures as income), even though—for tax purposes—he considers his life insurance policy as a personal asset. For example, Kain claimed

his life insurance policy as a personal savings account when applying for a business loan in 2016. Kain also listed his life insurance's cash value as an asset on a personal financial statement in 2015.

31.   Kain also provided false information to lenders to obtain large sums of money allegedly for business reasons that he ultimately uses for personal reasons. For example, in 2017 Kain obtained a $242,000 loan from Funding Circle with a monthly payment of $8,555. In an email to Funding Circle dated September 28, 2017, Kain said that he planned to use the funds for working capital. In early 2018, Kain applied for a business loan with Straight Line Source—but the loan was denied. In an email exchange with a Straight Line Source branch manager, Kain said that he didn't have to tell the truth about taking the $250k loan from Funding Circle, which ultimately went to his brother. Kain stated: "but the truth is, I have never taken a loan at high interest in my life. My brother started a small business and needed help and no one would give him a loan because his company is new and had no history. He asked me to assist him and he would pay this short term loan.  I did. Whether the loan is for SOS or my brother, who cares, as long as it is under SOS Shipping. Good or bad, the loan is there."

32. SOS Transportation's tax and financial records also show significant discrepancies. SOS Transportation reported a loss on its taxes for every year between 2016 and 2019:

|  | 2016 | 2017 | 2018 | 2019 |
|---|---|---|---|---|
| Gross receipts: | $23,330 | $42,555 | $21,062 | $0 |
| Ordinary income: | -$1,238 | -$4,797 | -$7,020 | -$18,515 |

33. A review of Kain's business tax records show that Kain "loaned" SOS Transportation $33,000 in 2016, but bank records show that Kain only "loaned" SOS Transportation $16,000—from SOS's bank account.

34. Bank records show that SOS Transportation had a single bank account and that Kain and his brother, Ahmad Kain, were the signatories on the account. The account was opened on June 13, 2016 and closed on approximately September 30, 2019. Based on my training, experience, and my analysis of these accounts, the bank account did not contain any regular business income or expenses. Total deposits were $40,306 in 2016, $42,255 in 2017, $34,562 in 2018, and $16,380 in 2019, and most of these deposits came from SOS bank accounts or F&A Trucking, a company owned by Kain's brother-in-law. Most of the deposits from F&A Trucking were labeled "payroll." Most of the withdrawals from the account were to pay an SOS Transportation loan, although there was also a $10,000 business check written in 2016 to Ahmad Kain for "personal loan." There were no payments indicating that Ahmad repaid this loan. Finally, my analysis of SOS Transportation's accounts show that deposits into its bank account exceeded reported gross receipts during the 2016 to 2019 period by approximately

20

$30,000—with no explanation for the discrepancy.

35. My review of the records and communications in this case suggests that Kain has foreign bank accounts and foreign income that he has not reported with the IRS, rendering his tax returns inaccurate. For example, Kain exchanged an email in January 2019 with Mohamad Imad Khalil of Bank Med in Lebanon regarding Kain's Bank Med loan balance of $277,730. Kain took out the loan in 2017 and made the first payment in August 2017. In 2019, Khalil wrote to offer Kain a new, lower monthly payment on his remaining balance of $64,000. Yet Kain's U.S. bank accounts do not show any payments made to Bank Med in Lebanon, and there is no indication in his financial information of where the $213,730 Kain paid to Bank Med came from.

36. Further, in an email dated February 1, 2018, with a branch manager of Straight Line Source regarding an SOS loan application, Kain admitted that "most of our sales are collected by our vendors at overseas destination via their agents. So, only a fraction comes back to after they deduct the cost." SOS does a large amount of business in Africa, and SOS agents in Africa regularly pay SOS expenses. For example, records obtained show that SOS paid Atlantic Container Lines (a shipping company) $1,859,716 from January – October 2017. Of that amount, more than $600,000 came from SOS agents in Africa. Yet, looking at SOS's tax filings, there is no indication that any income earned overseas and

deposited in a foreign bank account is included on SOS's tax returns as gross receipts. That is true despite the fact that SOS bank deposits exceed SOS's reported gross receipts (for tax purposes) by $276,754 in 2015, $109,105 in 2016, and $90,897 in 2017. In 2018, tax return gross receipts exceed bank deposits by approximately $800,000. More information is needed to determine if expenses paid from SOS's agents in Africa are being deduced from SOS's tax returns.

37. Further evidence suggesting that Kain has foreign bank accounts and foreign income that he has not reported with the IRS can be seen by comparing the number of vehicles Kain shipped each year with the gross receipts reported on his tax returns. A review of Kain's shipping records for 90 vehicles that he shipped for one particular client, MEG, between 2019 and 2021 shows that it costs $940 on average to ship a vehicle overseas. Yet, comparing the number of vehicles Kain/SOS shipped each year with the gross receipts for those years reported on SOS's tax returns show that SOS is not reporting enough money to even cover the costs of shipping the vehicles (much less pay salaries, overhead, and other expenses). Based on my training and experience, this indicates that SOS potentially has unreported income—likely in an unreported foreign bank account(s):

|  | Tax return gross receipts | # vehicles exported | Gross receipts/vehicle |
|---|---|---|---|
| 2014 | $15,885,143 | 18,019 | $881.58 |
| 2015 | $7,961,515 | 13,494 | $590 |
| 2016 | $3,107,140 | 4,606 | $674.59 |
| 2017 | $3,906,245 | 6,891 | $566.86 |
| 2018 | $6,945,817 | 10,714 | $648.29 |
| 2019 | $6,437,221 | 12,465 | $516.42 |

38.     Finally, additional evidence suggests that Kain is using his SOS bank accounts to conduct non-SOS business and possibly launder illegal proceeds. SOS bank records show that an individual with initials K.S. deposited $33,000 into an SOS bank account in 2020. When agents spoke with K.S. she admitted that she never shipped a car or did any business with SOS. Rather, K.S. said that she met a man on an online dating app in February 2020. The man told K.S. that he was stranded overseas in India and needed money to get home; he convinced K.S. to provide him $50,000, which she did, via MoneyGram, Cashapp, and by depositing $33,000 into SOS's bank account. When asked about that account, K.S. stated that the man provided her with the account number and directed her to deposit money into the account. From my analysis of SOS's accounts, the funds from K.S. appear to be comingled as normal business funds and were used to pay business expenses.

## B. Kain's personal financial information and discrepancies

39.     Kain's personal income tax returns report wages from SOS in the amount of $125,123 in 2015, $137,221 in 2016, $135,368 in 2017, and $119,600 in 2018.  Further, according to income tax return information, Kain's wife Mariam Beydoun is also employed and paid by SOS. Her SOS income was reported on her jointly filed tax return with Kain. Beydoun's SOS wages were $53,000 in 2015, $48,100 in 2016, $35,000 in 2017, and $36,400 in 2018. Kain and Beydoun's personal tax filings appear inconsistent with the amount of money they received

from SOS, including the "loans" described above.

40.    For example, Kain and Beydoun's combined personal income in 2015 was reported to be $178,123; but a review of their personal bank account information showed that personal deposits in their bank account in 2015 totaled approximately $302,540. In addition to payroll deposits, deposits into their personal accounts included $37,479 from AAA insurance proceeds, $25,000 in New York Life Insurance proceeds, and other smaller deposits. The funds from New York Life Insurance were moved from their personal accounts and into SOS's bank account—the check memo on the transfer read "loan." The status of the "loan" to SOS is unknown, but there was no "loan from shareholder" reflected on the 2015 tax return balance sheet, as there should have been if this were a proper documented loan.

41.    Based on my training, experience, and an analysis of Kain's personal 2015 tax filings, I believe that Kain had approximately $39,000 in unreported income and disbursements in 2015. Further, SOS's 2015 bank accounts show that there was an additional $12,500 issued to Kain personally that was not deposited into his personal bank accounts and was not reported as income on his tax returns.

42.    Based on a similar analysis of Kain's financial information for 2016, 2017, and 2018, there also appears to be unreported income and

24

disbursements in those years as well: approximately $41,000 in 2016, approximately $35,000 in 2017, and approximately $117,000 in 2018.

43. After reviewing all of the tax and financial records in this case, and based on my training and experience, I believe that Kain uses layering—blending money, including illicit money, from several sources and/or constantly moving money—in an attempt to disguise his transactions and reduce his tax liabilities. It is common for individuals who are involved in illegal activity and/or tax fraud to layer transactions to disguise the source of funds. It is also frequently the case that taxpayers like Kain who systematically underreport taxable income to do so over an extended period – making the SEIZED RECORDS recording Kain's business income prior to 2015 relevant to this investigation.

44. For example, on June 6, 2016, Kain deposited a check from SOS into his personal account in the amount of $11,000; the check said "disbursement" on the memo/subject line. On the same day, he made a $9,454 payment from his personal bank account to his personal Bank of America credit card. A few days later he, took a credit card advance from this same Bank of America credit card in the amount of $16,000 and deposited into his SOS Transportation business bank account. A portion of that money was then used to make a payment on an SOS Transportation loan ($9,087); another portion ($10,000) was paid to his brother, Ahmad Kain—the check said "loan" on the memo/subject line.

45.     In another example, Kain took a $15,000 cash advance on September 15, 2016, from SOS's business line of credit. Kain deposited the check into SOS's bank account; a few days later, Kain wrote himself a check for $7,500 and deposited the money into his personal account bank account. He then made a $5,200 payment on his personal credit card and then made some large purchases with his credit card, including buying several plane tickets. This $7,500 was not included as income on his personal tax filings.

46.     In a third example, records show that Kain made a payment of $10,000 on December 6, 2017, on a personal credit card (Bank of America). The payment came from a balance transfer from a different personal credit card (Comerica Bank). On December 14, 2017, Kain took a $15,000 advance from the Bank of America card and deposited the proceeds into his personal bank account at Chemical Bank. On December 19, 2017, KAIN wrote a $8,000 check to his son, Kasem Kain, with the memo line "loan." Kasem Kain then transferred $5,000 of the funds to his Coinbase virtual currency account.

47.     From my training and experience, I know that individuals often use their cellular phones to conduct business and personal matters. Evidence obtained from a court-authorized search of Kain's email account shows that Kain regularly uses his cellular telephone to conduct SOS business using email, voice,

and messaging platforms, primarily WhatsApp.[3]

48. Regarding email, your affiant has reviewed dozens of SOS-related

was from Malek Tahan. In a second example, on September 30, 2017, Tahan sent

Kain an email stating that he collected funds relating to three vehicles that were

seized. Kain sent an email from his phone responding to Tahan the next day—

October 1, 2017.

49. Further, Kain regularly conducted SOS business on WhatsApp using

his cellular phone. For example, records obtained via legal process show that Kain

exchanged approximately 105 WhatsApp messages with the owner of Sweetie Boy

Transportation between June 2018 and May 2021. Kain also used WhatsApp to

conduct business with international shippers. For example, in April 2018 Kain

emailed a shipping company specializing in transporting vehicles from the U.S. to

West Africa about tracking cargo, among other things. In this email, Kain told the

shipping company representative to call him, provided a phone number, and said

that he was available on WhatsApp. In a second example, in May 2017, Kain

---

[3] WhatsApp is a U.S. company that provides an Internet-based multimedia messaging service, WhatsApp Messenger, via a cross-platform smartphone application that permits users to send and receive messages and calls. The smartphone-based WhatsApp Messenger allows users to exchange, inter alia, text messages, audio messages, video messages, and files such as documents and photos with other WhatsApp users. It also permits users to engage in real-time voice and video calls and to set up and participate in group chats. A user may use a cellular provider's data network or another data connection (such as a home wireless router or a public wireless hotspot) to which the user's device is connected to connect to and send messages via WhatsApp Messenger. WhatsApp also permits users of its smartphone application to access their WhatsApp accounts via a desktop or laptop computer.

emailed with an agent of a shipping company and stated that he sent a message and the manifest to the agent's WhatsApp account. In a third example, during Kain's email exchange in January 2019 with Mohamad Imad Khalil of Bank Med in Lebanon regarding Kain's Bank med loan balance (see paragraph 32), Kain tried to have Khalil call him on WhatsApp number to discuss the matter. In a fourth example, a representative from a shipping company sent Kain a WhatsApp message saying that "heard Kain's whatsapp message"; the representative then discussed commission on a project in West Africa. In a fifth example, Kain exchanges a series of emails with a shipping company about shipping vehicles to Nigeria. At one point in the messages, Kain asks the shipping company representative to provide a WhatsApp phone number for Kain to contact them on.

50.   From my training and experience, I am familiar with how electronic devices and mobile communication devices can be used to keep, store, and preserve electronic images, location information, contact information, metadata, and other electronic material that may be relevant to a criminal investigation and to establish identify, the location and designs of other conspirators, and the location of other relevant evidence.

## EMPLOYMENT TAX FRAUD

51.   After the execution of the search warrant on October 13, 2021, additional evidence was analyzed, and witness interviews were conducted. This

information indicates Kain paid the employees of SOS a significant amount of payroll in cash.  The wages paid in cash were not reported to the Internal Revenue Service and Kain did not withhold or pay over payroll taxes for the wages he paid in cash. Analysis shows most of the employees were paid more than 50% of their wages in cash.  During the investigative years SOS had on average ten to fifteen employees.

52.   According to statements made by a former SOS employee, most of the employees received a Form W2 reporting a small amount of wages earned while working at SOS. The Forms W2 and payroll checks were prepared by SOS's Return Preparer based on payroll information submitted to them by Kain.  Payroll tax returns were then prepared and filed by Kain's Return Preparer using the information provided to them by Kain. According to witness statements and an analysis of relevant records, each employee was on average paid $200 per week by direct deposit based on the payroll information provided to the Return Preparer. The balance of their wages was paid to them by Kain in cash.  Based on the review of Return Preparer records, the weekly payroll amount reported for the employees of SOS did not fluctuate much throughout the years, and was materially different from the SOS employees' actual payroll amounts.

53.   According to statements by former SOS employees, during the investigative years, employees' working hours were tracked using a biometric

system.  The biometric system used by SOS was a Finger Tec device attached to the wall near the front door of the business.  The actual Finger Tec device was not seized on October 13, 2021, however data from the software was maintained on the SOS server, which was imaged by Computer Forensic Agents on the day of the search warrant. When employees arrived or departed from work, they would use their fingerprint to log into or out of work on the Finger Tec system.  *(Evidence indicates there are a few employees who did not clock in or out of Finger Tec, so how their work hours were tracked is unknown.)* An employee of the business would run Finger Tec Gross Wage Reports weekly and provide the reports to Kain. The reports detailed each employees' hours worked for the week, pay rate and total pay for the time-period.  The cash payroll amount was calculated by taking their total pay from the reports less the payroll amount provided to the Return Preparer. According to statements made by the Return Preparer, he was not provided the Finger Tec data to prepare the payroll tax return or payroll checks.  The Finger Tec data appears to be inconsistent with employment tax filings filed with the Internal Revenue Service.  Your affiant was not aware of the Finger Tec system until after the October 2021 search warrant was executed and the seized evidence was analyzed.  Accordingly, the Finger Tec database supports probable cause to believe that Kain systematically committed violations of Title 26 U.S.C. Section 7202 for the tax years 2015 through 2020.

54.   For example, Return Preparer records reflect one employee was paid $240.00 per week *($12 per hour, 20 hours a week)* for the entire year of 2019 and was issued a Form W2 in the amount of $12,240. Finger Tec evidence shows this employee was paid $13 per hour and worked approximately 1,714 hours in 2019. Based on this information, the employee was actually paid about $22,282, and the employee would have been paid over $10,000 in cash for the year 2019.  Your affiant is also in the possession of evidence that indicates a SOS warehouse employee was paid completely in cash. meaning that none of his wages were recorded on SOS's books.  IRS records do not indicate this individual ever worked at SOS, and this individual has never received a Form W2 issued from SOS. Kain informed Agents this individual worked for SOS and surveillance video seized from the search warrant corroborates Kain paying this same individual cash.

55.   Based on the information in this affidavit I have probable cause to believe that Kain has violated Title 26 U.S.C. Section 7202 by failing to report and pay the tax on wages paid in cash to his employees of SOS.

## SANCTIONS VIOLATIONS

56.   Subsequent to the execution of the search warrant on October 13, 2021, additional information was reviewed relating to the December 2011 civil forfeiture complaint filed by the United States in the Southern District of New York against, among others, Kain's company Global Shipping Services.  The forfeiture action and civil money laundering complaint arose out of an investigation conducted by the

Drug Enforcement Administration (DEA) and other federal law enforcement agencies of a scheme to launder money though the United States financial system and the United States used car market. As part of the scheme, funds were allegedly transferred from Lebanon to the US in order to purchase used cars, which were then shipped to West Africa and sold for cash. Cash proceeds of those cars sales were then transferred, along with the proceeds of narcotics trafficking and other crimes, to Lebanon. The cash was often moved through bulk cash smuggling networks. Members of the Foreign Terrorist Organization ("FTO") Hezbollah and its supporters were allegedly involved at various points in the money laundering scheme.

57. On October 8, 1997, the United States Secretary of State designated Hezbollah as an FTO under Section 219 of the Immigration and Nationality Act. The designation included the following aliases: Party of God, Islamic Jihad, Islamic Jihad Organization, Revolutionary Justice Organization, Organization of the Oppressed on Earth, Islamic Jihad for the Liberation of Palestine, Organization of Right Against Wrong, Ansar Allah, and Followers of the Prophet Muhammad. On May 16, 2017, the Secretary of State amended the designation of Hezbollah to include the following aliases: Lebanese Hezbollah, Lebanese Hezbollah, LH, Foreign Relations Department, also known as FRD, External Security Organization, also known as ESO, also known as Foreign Action Unit, also known as Hezbollah ESO, also known as Hezbollah International, also known as Special Operations Branch, also known as

External Services Organization, and also known as External Security Organization of Hezbollah.  To date, Hezbollah remains a designated FTO.

58.  The International Emergency Economic Powers Act ("IEEPA"), Title 50, United States Code, Sections 1701 to 1706, grants authority to the President of the United States to "deal with any unusual and extraordinary threat, which has its source in whole or substantial part outside the United States, . . . if the President declares a national emergency with respect to such threat."  50 U.S.C. § 1701(a).

59.  Pursuant to IEEPA, the President of the United States is authorized, among other things, to "investigate, regulate, or prohibit - (i) any transactions in foreign exchange, (ii) transfers of credit or payments between, by, through, or to any banking institution, to the extent that such transfers or payments involve any interest of any foreign country or national thereof [and] (iii) the importing or exporting of currency or securities[.]" 50 U.S.C. § 1702(a)(1)(A).  Also pursuant to IEEPA, the President has the authority to "block . . . any acquisition, holding, withholding, use, transfer, withdrawal, transportation, importation or exportation of, or dealing in, or exercising any right, power, or privilege with respect to or transactions involving, any property in which any foreign country or a national thereof has any interest by any person . . ." 50 U.S.C. § 1702(a)(1)(B).  Section 1705(a) of IEEPA makes it unlawful for anyone to "violate, attempt to violate, conspire to violate, or cause a violation of any license, order, regulation, or prohibition issued under this chapter."

33

60.  On September 23, 2001, pursuant to IEEPA and other statutes, the President of the United States issued Executive Order 13224, titled, "Blocking Property and Prohibiting Transactions with Persons Who Commit, Threaten to Commit, or Support Terrorism," declaring a national emergency with respect to the threat to the national security, foreign policy, and economy of the United States posed by grave acts of terrorism and threats of terrorism committed by foreign terrorists, including the September 11, 2001, attacks in New York, Pennsylvania and Virginia, and the continuing and immediate threat of further attacks on U.S. nationals or the United States.

61.  Pursuant to IEEPA and Executive Order 13224, the Department of the Treasury, Office of Foreign Assets Control ("OFAC") subsequently promulgated the Global Terrorism Sanctions Regulations ("GTSR"), Title 31, Code of Federal Regulations, Part 594.  Among other things, the GTSR permits OFAC to designate individual and entities to be "Specially Designated Global Terrorists" ("SDGT") if they meet certain criteria, such as providing support and services to or in support of a terrorist organization.  31 C.F.R. §§ 594.201(a)(4)(i), 594.310.  The GTSR blocks all property of SDGTs "within the possession or control of U.S. persons, including their overseas branches" from being "transferred, paid, exported, withdrawn or otherwise dealt in[.]"  31 C.F.R. § 594.201(a).  The GTSR also prohibits conspiring to engage in any transactions prohibited by the regulations.  31 C.F.R. § 594.205(b).

34

62. In October 2001, the Secretary of State designated Hezbollah as an SDGT pursuant to Executive Order 13224 because it had committed, or posed a significant risk of committing, acts of terrorism that threaten the security of U.S. nationals or the national security, foreign policy, or economy of the United States. *See* 67 Fed. Reg. 12633 (Mar. 19, 2002).

63. The Foreign Narcotics Kingpin Designation Act (the "Kingpin Act"), 21 U.S.C. § 1902 et seq., establishes a program targeting the activities of significant foreign narcotics traffickers and their organizations on a worldwide basis. Under the Kingpin Act, the President has the authority to impose sanctions against significant foreign narcotics traffickers and their organizations on a worldwide basis, with the objective of denying their businesses and agents access to the U.S. financial system and the benefits of trade and transactions involving U.S. companies and individuals.

64. Pursuant to the Kingpin Act, OFAC promulgated the Foreign Narcotics Kingpin Sanctions Regulations, 31 C.F.R. § 598 et seq. When an individual or entity is designated under these regulations, all of their property and interests in property that are in the United States, that come within the United States, or that come within the possession or control of any U.S. person are blocked and may not be transferred, paid, exported, withdrawn, or otherwise dealt in. *Id.* § 598.202(a). Moreover, the making of any contribution or provision of funds, goods, or services, to, or for the benefit of any person who property and interests in property are blocked pursuant to these sanctions is prohibited. *Id.* § 598.202(b).

65.    On January 26, 2011, OFAC designated Ayman Joumaa, a Lebanese narcotics trafficker and money launder, under the Kingpin Act and associated regulations.  *See* 76 Fed. Reg. 5858 (Feb. 2, 2011).  The same day, OFAC designated, the Hassan Ayash Exchange Company, the Ellissa Exchange Company (two Lebanese exchange houses), and Ali Kharroubi (a/k/a Ali Kharoubi) for their role in Joumaa's laundering of narcotics proceeds.  In addition, OFAC designated the Ellissa Group SA, Ellissa Holding, Ellissa Megastore, Ellissa Parc Cotonou, and Ellissa Shipping, the latter three of which were located in Benin, for their money laundering activities related to Joumaa.

66.    According to the U.S. Department of Treasury, Joumaa and his network "coordinated the transportation, distribution, and sale of multi-ton shipments of cocaine from South American and [have] laundered the proceeds from the sale of cocaine in Europe and the Middle East. . . Operating in Lebanon, West Africa, Panama and Colombia, Joumaa and his organization launder proceeds from their illicit activities – as much as $200 million per month – through various channels, including bulk cash smuggling operations and Lebanese exchange houses."  *See* U.S. Dep't of Treasury, "Treasury Targets Major Lebanese-Based Drug Trafficking and Money Laundering Nework," (available at https://home.treasury.gov/news/press-releases/tg1035).

67.    On November 3, 2011, Joumaa was indicted in the Eastern District of Virginia for coordinating the shipment of over 85,000 kilograms of cocaine and

laundering in excess of $250 million in narcotics proceeds. Case No. 1:11-cr-00560. Joumaa remains a fugitive.

68.    On December 15, 2021, the United States filed a civil forfeiture complaint in the Southern District of New York against, among others, the Ellissa Holding Company, the Hassan Ayash Exchange Company, and all assets of the Ellissa Holding Company and the Hassan Ayash Exchange Company that were held by 30 used car buyers in the United States. *See* Compl., Case No. 11-cv-9186. Listed among the 30 used car buyers holding assets of the Ellissa Holding Company and the Hassan Ayash Exchange Company was Kain's company, Global Shipping Services based in Detroit, Michigan.

69.    In May 2012, the United States and Kain filed a Stipulation and Order of Settlement concerning the United States' civil forfeiture complaint. *Id.* ECF No. 248. In the settlement agreement, Kain represented to the United States that he "did not know or have reason to know of the matters alleged in the Complaint, including allegations of a scheme to launder proceeds of IEEPA violations and narcotics transactions through the United States car market." *Id.* at 3. Kain agreed, among other things, to forfeit the funds held in two U.S. bank accounts, to adopt due diligence and know-your-customer procedures, and to not enter into any transactions with any customer he has reason to believe is affiliated with or does business with Hezbollah, or has reason to believe is involved in narcotics trafficking or money laundering or does business with individuals or entities involved in narcotics

37

trafficking or money laundering.  Shortly after entering this settlement agreement,

Kain closed Global Shipping Services.

70.  Search warrant evidence seized on October 13, 2021 from Kain's

business location included an electronic QuickBooks file for SOS. SOS was

registered with the State of Michigan as a corporation in 2009. The

QuickBooks file contains customer information for over eighteen hundred

(1,800) customers. Most of the customer files contain full business name,

billing information, email addresses, and phone numbers.  Based on witness

interviews, Kain prepares SOS invoices for the shipment of vehicles overseas

using the QuickBooks software. In an interview, Kain told Agents he is

responsible for all the bookkeeping at SOS and utilizes QuickBooks.  Each

customer profile in the SOS QuickBooks appears to contain all invoices

associated with that customer for a date range going back until at least 2006.

71.  A customer list report was generated from the SOS QuickBooks

electronic file; the list does not include any dates. A review of the SOS

customer list contained entries for transactions with, among others, Ali

Kharoubi and the Ellissa Group, both of whom have been designated by

OFAC under the Kingpin Act and the Foreign Narcotics Kingpin Sanctions

Regulations.  The QuickBooks database also included entries for transactions

with some of the entities identified in the 2011 civil forfeiture action in the

Southern District of New York that allegedly wired money to Kain's

company during the course of Hezbollah's used car money laundering

scheme.

72.   Based on these observations, together with other evidence in this

investigation, your affiant has reason to believe that Kain and SOS continue

to conduct business with individuals and entities on the SDGT, Foreign

Narcotics Kingpin list, and/or FTO lists, in violation of Title 50 U.S.C.

Section 1705 and Title 21 U.S.C. Section 1906.  The evidence to support

these violations exists in the SEIZED MATERIALS obtained pursuant to the

October 13, 2021 search warrants.

## COMPUTERS, ELECTRONIC STORAGE, and FORENSIC ANALYSIS

73. As described above and in Attachment B, this application seeks

permission to search for records that might be found in the SEIZED RECORDS in

whatever form they are found. One form in which the records might be found is

data stored on a computer's hard drive or other storage media. Thus, the warrant

applied for would authorize the seizure of electronic storage media or, potentially,

the copying of electronically stored information, all under Rule 41(e)(2)(B),

specifically the QuickBooks and Finger Tec databases used and maintained by

Kain, and which were seized on October 13, 2021.

74.   *Probable cause.* I submit that if a computer or storage medium is

found in the SEIZED RECORDS, there is probable cause to believe those records will be stored on that computer or storage medium, for at least the following reasons:

b.  Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet. Electronic files downloaded to a storage medium can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

c.  Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently being used by an active file—for long periods of time before they are overwritten. In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

d.  Wholly apart from user-generated files, computer storage media—in particular, computers' internal hard drives—contain electronic evidence of how a computer has been used, what it has been used for, and who has used it. To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating system or application operation, file system data structures, and virtual memory "swap" or paging files. Computer users typically do not erase or delete this evidence, because special software is typically required for that task. However, it is technically possible to delete this information.

e.  Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

f.  Based on actual inspection of other evidence related to this

investigation, including financial information, vehicle sales records, and vehicle shipping records, I am aware that computer equipment was used to generate, store, and print documents used in the money laundering scheme. There is reason to believe that there is a computer system currently located on the SUBJECT PREMISES.

75. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only computer files that might serve as direct evidence of the crimes described on the warrant, but also for forensic electronic evidence that establishes how computers were used, the purpose of their use, who used them, and when. There is probable cause to believe that this forensic electronic evidence will be on any storage medium in the PREMISES because:

g. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active. Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords. Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer was in use. Computer file systems can record information about the dates files were created and the sequence in which they were created, although this information can later be falsified.

h. As explained herein, information stored within a computer and other electronic storage media may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, information stored within a computer or storage media (registry information, communications,

images and movies, transactional information, records of session times and durations, internet history, and anti-virus, spyware, and malware detection programs) can indicate who has used or controlled the computer or storage media. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. The existence or absence of anti-virus, spyware, and malware detection programs may indicate whether the computer was remotely accessed, thus inculpating or exculpating the computer owner. Further, computer and storage media activity can indicate how and when the computer or storage media was accessed or used. For example, as described herein, computers typically contain information that log: computer user account session times and durations, computer activity associated with user accounts, electronic storage media that connected with the computer, and the IP addresses through which the computer accessed networks and the internet. Such information allows investigators to understand the chronological context of computer or electronic storage media access, use, and events relating to the crime under investigation. Additionally, some information stored within a computer or electronic storage media may provide crucial evidence relating to the physical location of other evidence and the suspect. For example, images stored on a computer may both show a particular location and have geolocation information incorporated into its file data.  Such file data typically also contains information indicating when the file or image was created. The existence of such image files, along with external device connection logs, may also indicate the presence of additional electronic storage media (e.g., a digital camera or cellular phone with an incorporated camera).  The geographic and timeline information described herein may either inculpate or exculpate the computer user. Last, information stored within a computer may provide relevant insight into the computer user's state of mind as it relates to the offense under investigation. For example, information within the computer may indicate the owner's motive and intent to commit a crime (e.g., internet searches indicating criminal planning), or consciousness of guilt (e.g., running a "wiping" program to destroy evidence on the computer or password protecting/encrypting such evidence in an effort to conceal it from law enforcement).

i.  A person with appropriate familiarity with how a computer works can, after examining this forensic evidence in its proper context, draw

conclusions about how computers were used, the purpose of their use, who used them, and when.

j.  The process of identifying the exact files, blocks, registry entries, logs, or other forms of forensic evidence on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. While it is possible to specify in advance the records to be sought, computer evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

k.  Further, in finding evidence of how a computer was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium. For example, the presence or absence of counter-forensic programs or anti-virus programs (and associated data) may be relevant to establishing the user's intent.

76.  *Necessity of seizing or copying entire computers or storage media.* In most cases, a thorough search of a premises for information that might be stored on storage media often requires the seizure of the physical storage media and later off-site review consistent with the warrant. In lieu of removing storage media from the premises, it is sometimes possible to make an image copy of storage media. Generally speaking, imaging is the taking of a complete electronic picture of the computer's data, including all hidden sectors and deleted files. Either seizure or imaging is often necessary to ensure the accuracy and completeness of data recorded on the storage media, and to prevent the loss of the data either from accidental or intentional destruction. This is true because of the following:

43

l. The time required for an examination. As noted above, not all evidence takes the form of documents and files that can be easily viewed on site. Analyzing evidence of how a computer has been used, what it has been used for, and who has used it requires considerable time, and taking that much time on premises could be unreasonable. As explained above, because the warrant calls for forensic electronic evidence, it is exceedingly likely that it will be necessary to thoroughly examine storage media to obtain evidence. Storage media can store a large volume of information. Reviewing that information for things described in the warrant can take weeks or months, depending on the volume of data stored, and would be impractical and invasive to attempt on-site.

m. Technical requirements. Computers can be configured in several different ways, featuring a variety of different operating systems, application software, and configurations. Therefore, searching them sometimes requires tools or knowledge that might not be present on the search site. The vast array of computer hardware and software available makes it difficult to know before a search what tools or knowledge will be required to analyze the system and its data on the Premises. However, taking the storage media off-site and reviewing it in a controlled environment will allow its examination with the proper tools and knowledge.

n. Variety of forms of electronic media. Records sought under this warrant could be stored in a variety of storage media formats that may require off-site reviewing with specialized forensic tools.

77. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit seizing, imaging, or otherwise copying storage media that reasonably appear to contain some or all of the evidence described in the warrant, and would authorize a later review of the

media or information consistent with the warrant. The later review may require techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of a hard drive to human inspection in order to determine whether it is evidence described by the warrant.

78. Specialized Overseas Shipping, SOS Transportation, and SOS Realty ("the Companies") are functioning companies that may conduct legitimate business. The seizure of the Companies' computers may limit the Companies' ability to conduct its legitimate business. As with any search warrant, I expect that this warrant will be executed reasonably. Reasonable execution will likely involve conducting an investigation on the scene of what computers, or storage media, must be seized or copied, and what computers or storage media need not be seized or copied. Where appropriate, officers will copy data, rather than physically seize computers, to reduce the extent of disruption. If employees of the Companies' so request, the agents will, to the extent practicable, attempt to provide the employees with copies of data that may be necessary or important to the continuing function of the Companies' legitimate business. If, after inspecting the computers, it is determined that some or all of this equipment is no longer necessary to retrieve and preserve the evidence, the government will return it.

## CONCLUSION

79. I submit that this affidavit supports probable cause for a warrant to search the SEIZED RECORDS described in Attachment A and seize and retain the items described in Attachment B.

80.   I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

Respectfully submitted,

_____

Jessica Knickerbocker, Special Agent
IRS – Criminal Investigations

Sworn to before me and signed in my
presence and/or by reliable electronic means.

_____
David R. Grand
United States Magistrate Judge

Dated:   August 31, 2023

46

## ATTACHMENT A

## DESCRIPTION OF THE SEIZED RECORDS TO BE SEARCHED

The property to be searched are records seized on October 13, 2021 pursuant to a executed search warrant.  The records contain electronic and paper documents seized from the business location of Specialized Overseas Shipping Inc. located at 6425 Tireman, Detroit, Michigan 48204 and the personal residence of Ali Kain located at 16332 Horseshoe Drive, Northville, Michigan 48168. Provided below are the search warrant returns for a description of items seized on October 13, 2021.

USAO File Number:   2018R00729          AUSA:   Hank Moon          Telephone:  (313) 226-9100

AO 93  (Rev. 11/13) Search and Seizure Warrant          Special Agent:   Jessica Knickerbocker          Telephone:  (313) 965-2323

# UNITED STATES DISTRICT COURT
## for the
### Eastern District of Michigan

|  |  |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) |
| | )   Case No.  19-mc-50186-5 |
| 6425 Tireman Street, Detroit, MI 48204, and 16332 Horseshoe Drive, Northville, MI 48168, more fully described in Attachments A-1 and A-2. | ) |

## SEARCH AND SEIZURE WARRANT

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____ Eastern _____ District of _____ Michigan _____ .
*(identify the person or describe the property to be searched and give its location)*:

See ATTACHMENTs A-1 and A-2.

I hereby certify that the foregoing is a certified copy
of the original on file in this office.

**Clerk, U.S. District Court
Eastern District of Michigan**

By:   *s/Michael Williams*
         Deputy

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See ATTACHMENT B, violations of:

26 U.S.C. § 7206, fraud and false statements
18 U.S.C. § 542, entry of goods by means of false statements

**YOU ARE COMMANDED** to execute this warrant on or before   October 26, 2021 _____ *(not to exceed 14 days)*

[✓] in the daytime 6:00 a.m. to 10:00 p.m.      [ ] at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to   the presiding United States Magistrate Judge on duty   .
*(United States Magistrate Judge)*

[ ] Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*

[ ] for ____ days *(not to exceed 30)*   [ ] until, the facts justifying, the later specific date of _____ .

Date and time issued:      October 12, 2021    5:20 pm _____          _____
                                                                                                        *Judge's signature*

City and state:     Detroit, Michigan _____          Anthony P. Patti          U. S. Magistrate Judge
                                                                                                *Printed name and title*

**ATTACHMENT A-1**

**DESCRIPTION OF THE PREMISES TO BE SEARCHED**
**SUBJECT PREMISES 1**

The property to be searched is a commercial business located at 6425 Tireman Street, Detroit, MI 48204. The commercial business is described as a brown and beige cinderblock warehouse. There are signs visible on the east and west side of the building that reads "S.O.S Shipping & Logistic SERVICES 313-279-0331 6425 TIREMAN." On the east side of the building are large garage doors for the loading/unloading of goods and/or vehicles. Also, on the east side of the building is a gated parking lot, that stores several vehicles. On the west side of the building is entry doors to the main office space along with a gated parking lot. There is an awning over the door that reads "OFFICE."



AO 93 (Rev. 11/13) Search and Seizure Warrant (Page 2)

| **Return** | | |
|---|---|---|
| Case No.:<br>19-mc-50186-5 | Date and time warrant executed:<br>October 13, 2021; 0700 | Copy of warrant and inventory left with:<br>Ali Dagher, Attorney for Ali Kain; Ali Kain's office at location of search warrant. |
| Inventory made in the presence of :<br>S/A Jeffrey K. Riedel | | |
| Inventory of the property taken and name of any person(s) seized:     See Attached inventory of items seized. | | |

**Certification**

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: 10/13/2021

_____
Executing officer's signature

Jessica Knickerbocker, Special Agent
Printed name and title

# Inventory Listing of Warrant Items Seized at Search Warrant Site

**Site Name:**
6425 Tireman
Detroit, MI 48204
Specialized Overseas
Shipping  (SOS Shipping)

**Investigation Number:**
1000294700
**Starting Date and Time:**
10/13/2021 08:32 AM
**Ending Date and Time:**
10/13/2021 04:37 PM

**Report Date:**
Wednesday, October 13,
2021

---

| **Control #:** | 1 | **Evidence Box:** | |
|---|---|---|---|
| **Location:** | DESK | **Locator Code:** | DESK |
| **Found:** | OFFICE-DESK A-3 | | |
| **Description:** | Seized Per Warrant | DOCK RECEIPTS<br>PAD WITH EMPLOYEE DIRECTIONS<br>DISPATCH SHEETS | |

---

| **Control #:** | 2 | **Evidence Box:** | |
|---|---|---|---|
| **Location:** | DESK | **Locator Code:** | A-7 |
| **Found:** | DESK DRAWER, FILE RACKS | | |
| **Description:** | Seized Per Warrant | TITLE, INVOICES, DOCK RECEIPTS, BILLS OF LADING | |

---

| **Control #:** | 3 | **Evidence Box:** | |
|---|---|---|---|
| **Location:** | DESK | **Locator Code:** | A-6 |
| **Found:** | DESK | | |
| **Description:** | Seized Per Warrant | DOCK RECEIPTS, INVOICES, TITLES FOR 2020 & 2021 | |

---

| **Control #:** | 4 | **Evidence Box:** | |
|---|---|---|---|
| **Location:** | DESK | **Locator Code:** | A-8 DESK |
| **Found:** | DESK | | |
| **Description:** | Seized Per Warrant | MICHIGAN TAXES, BUSINESS EXP, INVOICES, BANK ST,<br>COPIES OF MONEY ORDERS, DEPT OF LABOR DOCS,<br>IRS DOCS | |

---

| **Control #:** | 5 | **Evidence Box:** | |
|---|---|---|---|
| **Location:** | DESK | **Locator Code:** | A-8 DESK |
| **Found:** | GARBAGE | | |
| **Description:** | Seized Per Warrant | INVOICE/WAREHOUSE RECEIPTS | |

---

| **Control #:** | 6 | **Evidence Box:** | |
|---|---|---|---|
| **Location:** | DESK | **Locator Code:** | DESK A-8 |
| **Found:** | DESK | | |
| **Description:** | Seized Per Warrant | BUSINESS INVOICES, DETROIT TAX DOCS, VEHICLE<br>TITLES, DOCK RECEIPTD-2021, FEE SCHEDULES,<br>COPIES OF CHECKS, IRS GJ SUBPOENA | |

---

| | | | |
|---|---|---|---|
| **Control #:** | 7 | **Evidence Box:** | |
| **Location:** | DESK | **Locator Code:** | DESK A-8 |
| **Found:** | DESK | | |
| **Description:** | Seized Per Warrant   2021 INVOICES; 2020 INVOICES | | |

| | | | |
|---|---|---|---|
| **Control #:** | 8 | **Evidence Box:** | |
| **Location:** | DESK | **Locator Code:** | A-7 |
| **Found:** | GARBAGE | | |
| **Description:** | Seized Per Warrant   GARBAGE | | |

| | | | |
|---|---|---|---|
| **Control #:** | 9 | **Evidence Box:** | |
| **Location:** | WAREHOUSE | **Locator Code:** | |
| **Found:** | FILE CABINET | | |
| **Description:** | Seized Per Warrant   H1 CONTAINER IN ROOM G | | |

| | | | |
|---|---|---|---|
| **Control #:** | 10 | **Evidence Box:** | |
| **Location:** | WAREHOUSE | **Locator Code:** | |
| **Found:** | CONTAINER | | |
| **Description:** | Seized Per Warrant   CHECK REGISTERS<br>FILE CABINTS  H-1 - H-3 | | |

| | | | |
|---|---|---|---|
| **Control #:** | 11 | **Evidence Box:** | |
| **Location:** | WAREHOUSE | **Locator Code:** | |
| **Found:** | FILE CABINET H | | |
| **Description:** | Seized Per Warrant   DOCK RECEIPTS | | |

| | | | |
|---|---|---|---|
| **Control #:** | 12 | **Evidence Box:** | |
| **Location:** | STORAGE CONTAINER-SW | **Locator Code:** | |
| **Found:** | H-7  DRAWER | | |
| **Description:** | Seized Per Warrant   INVOICES, SHIPPING DOCS | | |

| | | | |
|---|---|---|---|
| **Control #:** | 13 | **Evidence Box:** | |
| **Location:** | STORAGE CONTAINER-SW | **Locator Code:** | |
| **Found:** | DESK/FILE CABINET H-8 | | |
| **Description:** | Seized Per Warrant   INVOICES, SHIPPING DOCS | | |

| | | | |
|---|---|---|---|
| **Control #:** | 14 | **Evidence Box:** | |
| **Location:** | STORAGE CONTAINER-SW | **Locator Code:** | |
| **Found:** | H-4  FILE CABINET/DRAWER | | |
| **Description:** | Seized Per Warrant   INVOICES, SHIPPING DOCS | | |

| | | | |
|---|---|---|---|
| **Control #:** | 15 | **Evidence Box:** | |
| **Location:** | STORAGE CONTAINER-SW | **Locator Code:** | |
| **Found:** | FILE CABINET-TOP DRAWER H-6 | | |
| **Description:** | Seized Per Warrant   BUSINESS INVOICES | | |

| | | |
|---|---|---|
| **Control #:** | 16 | **Evidence Box:** |
| **Location:** | STORAGE CONTAINER-SW | **Locator Code:** |
| **Found:** | H-2 FILE CABINET | |
| **Description:** | Seized Per Warrant   DOCK RECEIPTS, TITLES | |

| | | |
|---|---|---|
| **Control #:** | 17 | **Evidence Box:** |
| **Location:** | STORAGE CONTAINER-SW | **Locator Code:** |
| **Found:** | FILE CABINET H-2  DRAWER | |
| **Description:** | Seized Per Warrant   DOC RECEIPTS, TITLES | |

| | | |
|---|---|---|
| **Control #:** | 18 | **Evidence Box:** |
| **Location:** | STORAGE CONTAINER-SW | **Locator Code:** |
| **Found:** | FILE CABINET/H-6  SECOND DRAWER | |
| **Description:** | Seized Per Warrant   BUSINESS INVOICES, TITLES | |

| | | |
|---|---|---|
| **Control #:** | 19 | **Evidence Box:** |
| **Location:** | DESK | **Locator Code:** |
| **Found:** | DESK A-4 | |
| **Description:** | Seized Per Warrant   DOCK RECEIPTS, 2021 | |

| | | |
|---|---|---|
| **Control #:** | 20 | **Evidence Box:** |
| **Location:** | DESK | **Locator Code:** |
| **Found:** | DESK A-5 | |
| **Description:** | Seized Per Warrant   DOCK RECEIPTS, TITLES, FINANCIAL DOCUMENTS | |

| | | |
|---|---|---|
| **Control #:** | 21 | **Evidence Box:** |
| **Location:** | STORAGE CONTAINER-SW | **Locator Code:** |
| **Found:** | FILE CABINET H-5 | |
| **Description:** | Seized Per Warrant   DOCK RECEIPTS, SHIPPING DOCS | |

| | | |
|---|---|---|
| **Control #:** | 22 | **Evidence Box:** |
| **Location:** | STORAGE CONTAINER-SW | **Locator Code:** |
| **Found:** | FILE CABINET-H-6 | |
| **Description:** | Seized Per Warrant   BUSINESS INVOICES, VEHICLE TITLES, BANK DOCS | |

| | | |
|---|---|---|
| **Control #:** | 23 | **Evidence Box:** |
| **Location:** | STORAGE CONTAINER-SW | **Locator Code:** |
| **Found:** | FLOOR | |
| **Description:** | Seized Per Warrant   BUSINESS INVOICES | |

| | | |
|---|---|---|
| **Control #:** | 24 | **Evidence Box:** |
| **Location:** | STORAGE CONTAINER-SW | **Locator Code:** |
| **Found:** | H-5 FILE DRAWER | |
| **Description:** | Seized Per Warrant   SHIPPING DOCS, BILLS OF LADING, DOCK RECEIPTS | |

| **Control #:** | 25 | **Evidence Box:** | |
| **Location:** | STORAGE CONTAINER-SW | **Locator Code:** | |
| **Found:** | FLOOR | | |
| **Description:** | Seized Per Warrant   BUSINESS INVOICES | | |

| **Control #:** | 26 | **Evidence Box:** | |
| **Location:** | STORAGE CONTAINER-SW | **Locator Code:** | |
| **Found:** | FILE CABINET  H-5 DRAWER | | |
| **Description:** | Seized Per Warrant   BILLS OF LADING | | |

| **Control #:** | 27 | **Evidence Box:** | |
| **Location:** | STORAGE CONTAINER-SW | **Locator Code:** | |
| **Found:** | FLOOR | | |
| **Description:** | Seized Per Warrant   BUSINESS INVOICES | | |

| **Control #:** | 28 | **Evidence Box:** | |
| **Location:** | DESK | **Locator Code:** | |
| | KAIN OF | | |
| **Found:** | DESK C-1 | | |
| **Description:** | Seized Per Warrant   CONTRACTS, FINANCIAL DOCS | | |

| **Control #:** | 29 | **Evidence Box:** | 29 |
| **Location:** | DESK | **Locator Code:** | |
| | KAIN OF | | |
| **Found:** | INSIDE DESK C-1 | | |
| **Description:** | Seized Per Warrant   CONTROL NO. 29 | | |
| | FINANCIAL RECORDS | | |

| **Control #:** | 30 | **Evidence Box:** | |
| **Location:** | DESK | **Locator Code:** | |
| | KAIN OF | | |
| **Found:** | DESK C-1 | | |
| **Description:** | Seized Per Warrant | | |
| | CONTROL NO. 30 | | |
| | CONTRACTS, FINANCIAL DOCS | | |

| **Control #:** | 31 | **Evidence Box:** | |
| **Location:** | DESK | **Locator Code:** | |
| | KAIN OF | | |
| **Found:** | DESK C-1 | | |
| **Description:** | Seized Per Warrant   CONTROL NO. 31 | | |
| | MORTGAGE DOCS, PURCHASE AGREEMENT | | |

| **Control #:** | 32 | **Evidence Box:** | |
| **Location:** | KAIN OFFICE | **Locator Code:** | |
| | KAIN OF | | |
| **Found:** | DESK C-2 | | |
| **Description:** | Seized Per Warrant | PAPERWORK ( SHIPPING/SALES RECEIPTS, INVOICES) TORN UP CHECKS FROM TRASH | |

| **Control #:** | 33 | **Evidence Box:** | |
| **Location:** | KAIN OFFICE | **Locator Code:** | |
| | KAIN OF | | |
| **Found:** | COFFEE TABLE | | |
| **Description:** | Seized Per Warrant | INVOICES, RECEIPTS, CONTRACTS | |
| | | CONTROL 33 | |

| **Control #:** | 34 | **Evidence Box:** | |
| **Location:** | MAIN OFFICE | **Locator Code:** | |
| **Found:** | A-2 DESK | | |
| **Description:** | Seized Per Warrant | CONTROL NO 34 DOCK RECEIPTS, DOCUMENTATION | |

| **Control #:** | 35 | **Evidence Box:** | |
| **Location:** | MAIN OFFICE | **Locator Code:** | |
| **Found:** | DESK A-2 | | |
| **Description:** | Seized Per Warrant | CONTROL NO. 35 | |
| | | DOCK RECEIPTS, COPIES OF CERTIFICATES | |

| **Control #:** | 36 | **Evidence Box:** | |
| **Location:** | MAIN OFFICE | **Locator Code:** | |
| **Found:** | A-2 DESK | | |
| **Description:** | Seized Per Warrant | CONTROL NO 36 DOC RECEIPTS, TITLES, EMAIL CORRESPONDENCE | |

| **Control #:** | 37 | **Evidence Box:** | |
| **Location:** | MAIN OFFICE | **Locator Code:** | |
| **Found:** | DESK A-2 | | |
| **Description:** | Seized Per Warrant | CONTROL NO 37 DISPATCH SHEETS, DOC RECEIPTS, DOCUMENTS | |

| **Control #:** | 38 | **Evidence Box:** | |
| **Location:** | MAIN OFFICE | **Locator Code:** | |
| **Found:** | DESK A-2 | | |
| **Description:** | Seized Per Warrant | CONTROL NO. 38 DOCK RECEIPTS, SUPPORTING DOCS | |

| | | |
|---|---|---|
| **Control #:** | 39 | **Evidence Box:** |
| **Location:** | MAIN OFFICE | **Locator Code:** |
| **Found:** | DESK A-1 | |
| **Description:** | Seized Per Warrant   CONTROL 39 | |
| | DOCK RECEIPTS, EMAIL CORRESPONDENCE, | |
| | SHIPPING SCHEDULES | |

| | | |
|---|---|---|
| **Control #:** | 40 | **Evidence Box:** |
| **Location:** | MAIN OFFICE | **Locator Code:** |
| **Found:** | DESK A-1 | |
| **Description:** | Seized Per Warrant   CONTROL 40 | |
| | DOCK RECEIPTS, DOCUMENTS | |

| | | |
|---|---|---|
| **Control #:** | 41 | **Evidence Box:** |
| **Location:** | MAIN OFFICE | **Locator Code:** |
| **Found:** | DESK A-1 | |
| **Description:** | Seized Per Warrant   CONTROL NO 41 | |
| | DOCK RECEIPTS, DOCUMENTS | |

| | | |
|---|---|---|
| **Control #:** | 42 | **Evidence Box:** |
| **Location:** | MAIN OFFICE | **Locator Code:** |
| **Found:** | DESK A-1 | |
| **Description:** | Seized Per Warrant   CONTROL 42 | |
| | DOCK RECEIPTS, DOCUMENTS | |

| | | |
|---|---|---|
| **Control #:** | 43 | **Evidence Box:** |
| **Location:** | MAIN OFFICE | **Locator Code:** |
| **Found:** | DESK A-1 | |
| **Description:** | Seized Per Warrant   CONTROL NO 43 | |
| | DOCK RECEIPTS, EMAIL CORRESPONDENCE | |

| | | |
|---|---|---|
| **Control #:** | 44 | **Evidence Box:** |
| **Location:** | MAIN OFFICE | **Locator Code:** |
| **Found:** | DESK A-9 | |
| **Description:** | Seized Per Warrant   CONTROL NO 44 | |
| | INVOICES, TITLES | |

| | | |
|---|---|---|
| **Control #:** | 45 | **Evidence Box:** |
| **Location:** | MAIN OFFICE | **Locator Code:** |
| **Found:** | DESK A-9 | |
| **Description:** | Seized Per Warrant   CONTROL  NO 45 | |
| | INVOICES, TITLES | |

| | | |
|---|---|---|
| **Control #:** | 46 | **Evidence Box:** |
| **Location:** | MAIN OFFICE | **Locator Code:** |
| **Found:** | DESK A-9 | |
| **Description:** | Seized Per Warrant   CONTROL NO 46 | |
| | INVOICES, TITLES | |

| | | |
|---|---|---|
| **Control #:** | 47 | **Evidence Box:** |
| **Location:** | MAIN OFFICE | **Locator Code:** |
| **Found:** | DESK A-9 | |
| **Description:** | Seized Per Warrant   CONTROL NO 47 | |
| | INVOICES, TITLES | |

| | | |
|---|---|---|
| **Control #:** | 48 | **Evidence Box:** |
| **Location:** | TRAILER-NW CORNER | **Locator Code:** |
| **Found:** | TRAILER | |
| **Description:** | Seized Per Warrant   CONTROL NO 48 | |
| | DOCK RECEIPTS, INVOICES | |

| | | |
|---|---|---|
| **Control #:** | 49 | **Evidence Box:** |
| **Location:** | TRAILER-NW CORNER | **Locator Code:** |
| **Found:** | TRAILER | |
| **Description:** | Seized Per Warrant   CONTROL NO 49 | |
| | DOCK RECEIPTS, INVOICES | |

| | | |
|---|---|---|
| **Control #:** | 50 | **Evidence Box:** |
| **Location:** | TRAILER-NW CORNER | **Locator Code:** |
| **Found:** | TRAILER | |
| **Description:** | Seized Per Warrant   CONTROL NO 50 | |
| | DOCK INVOICES, RECEIPTS | |

| | | |
|---|---|---|
| **Control #:** | 51 | **Evidence Box:** |
| **Location:** | TRAILER-NW CORNER | **Locator Code:** |
| **Found:** | TRAILER | |
| **Description:** | Seized Per Warrant   CONTROL NO 51 | |
| | DOCK RECEIPTS | |
| | INVOICES | |

| | | |
|---|---|---|
| **Control #:** | 52 | **Evidence Box:** |
| **Location:** | TRAILER-NW CORNER | **Locator Code:** |
| **Found:** | TRAILER | |
| **Description:** | Seized Per Warrant   CONTROL NO 52 | |
| | DOCK RECEIPTS, INVOICES | |

| | | |
|---|---|---|
| **Control #:** | 53 | **Evidence Box:** |
| **Location:** | TRAILER-NW CORNER | **Locator Code:** |
| **Found:** | TRAILER | |
| **Description:** | Seized Per Warrant | CONTROL NO 53 |
| | | DOCK RECEIPTS, INVOICES |

| | | |
|---|---|---|
| **Control #:** | 54 | **Evidence Box:** |
| **Location:** | TRAILER-NW CORNER | **Locator Code:** |
| **Found:** | TRAILER | |
| **Description:** | Seized Per Warrant | CONTROL NO 54 |
| | | DOCK RECEIPTS, INVOICES |

| | | |
|---|---|---|
| **Control #:** | 55 | **Evidence Box:** |
| **Location:** | TRAILER-NW CORNER | **Locator Code:** |
| **Found:** | TRAILER | |
| **Description:** | Seized Per Warrant | CONTROL NO 55 |
| | | DOCK RECEIPTS, INVOICES |

| | | |
|---|---|---|
| **Control #:** | 56 | **Evidence Box:** |
| **Location:** | TRAILER-NW CORNER | **Locator Code:** |
| **Found:** | TRAILER | |
| **Description:** | Seized Per Warrant | CONTROL NO 56 |
| | | DOCK RECEIPTS |
| | | INVOICES |

| | | |
|---|---|---|
| **Control #:** | 57 | **Evidence Box:** |
| **Location:** | TRAILER-NW CORNER | **Locator Code:** |
| **Found:** | TRAILER | |
| **Description:** | Seized Per Warrant | CONTROL NO 57 |
| | | DOCK RECEIPTS |
| | | INVOICES |

| | | |
|---|---|---|
| **Control #:** | 58 | **Evidence Box:** |
| **Location:** | TRAILER-NW CORNER | **Locator Code:** |
| **Found:** | TRAILER | |
| **Description:** | Seized Per Warrant | CONTROL NO 58 |
| | | DOCK RECEIPTS, INVOICES |

| | | |
|---|---|---|
| **Control #:** | 59 | **Evidence Box:** |
| **Location:** | TRAILER-NW CORNER | **Locator Code:** |
| **Found:** | TRAILER | |
| **Description:** | Seized Per Warrant | CONTROL NO 59 |
| | | DOCK RECEIPTS, NVOICES |

| | | |
|---|---|---|
| **Control #:** | 60 | **Evidence Box:** |
| **Location:** | TRAILER-NW CORNER | **Locator Code:** |
| **Found:** | TRAILER | |
| **Description:** | Seized Per Warrant   CONTROL NO 60 | |
| | DOCK RECEIPTS, INVOICES | |

| | | |
|---|---|---|
| **Control #:** | 61 | **Evidence Box:** |
| **Location:** | TRAILER-NW CORNER | **Locator Code:** |
| **Found:** | TRAILER | |
| **Description:** | Seized Per Warrant   CONTROL NO 61 | |
| | DOCK RECEIPTS, INVOICES | |

| | | |
|---|---|---|
| **Control #:** | 62 | **Evidence Box:** |
| **Location:** | TRAILER-NW CORNER | **Locator Code:** |
| **Found:** | TRAILER | |
| **Description:** | Seized Per Warrant   CONTROL NO 62 | |
| | DOCK RECEIPTS, INVOICES | |

| | | |
|---|---|---|
| **Control #:** | 63 | **Evidence Box:** |
| **Location:** | TRAILER-NW CORNER | **Locator Code:** |
| **Found:** | TRAILER | |
| **Description:** | Seized Per Warrant   CONTROL NO 63 | |
| | DOCK RECEIPTS, INVOICES | |

| | | |
|---|---|---|
| **Control #:** | 64 | **Evidence Box:** |
| **Location:** | TRAILER-NW CORNER | **Locator Code:** |
| **Found:** | TRAILER | |
| **Description:** | Seized Per Warrant   CONTROL NO 64 | |
| | DOCK RECEIPTS, INVOICES | |

| | | |
|---|---|---|
| **Control #:** | 65 | **Evidence Box:** |
| **Location:** | TRAILER-NW CORNER | **Locator Code:** |
| **Found:** | TRAILER | |
| **Description:** | Seized Per Warrant   CONTROL 65 | |
| | DOCK RECEIPTS, INVOICES | |

| | | |
|---|---|---|
| **Control #:** | 66 | **Evidence Box:** |
| **Location:** | TRAILER-NW CORNER | **Locator Code:** |
| **Found:** | TRAILER | |
| **Description:** | Seized Per Warrant   CONTROL NO. 66 | |
| | DOCK RECEIPTS, INVOICES | |

| | | |
|---|---|---|
| **Control #:** | 67 | **Evidence Box:** |
| **Location:** | TRAILER-NW CORNER | **Locator Code:** |
| **Found:** | TRAILER | |
| **Description:** | Seized Per Warrant   CONTROL NO 67 | |
| | DOCK RECEIPTS, INVOICES | |

| | | |
|---|---|---|
| **Control #:** | 68 | **Evidence Box:** |
| **Location:** | TRAILER-NW CORNER | **Locator Code:** |
| **Found:** | TRAILER | |
| **Description:** | Seized Per Warrant   CONTROL NO 68<br>DOCK RECEIPTS, INVOICES | |

| | | |
|---|---|---|
| **Control #:** | 69 | **Evidence Box:** |
| **Location:** | TRAILER-NW CORNER | **Locator Code:** |
| **Found:** | TRAILER | |
| **Description:** | Seized Per Warrant   CONTROL NO 69<br>DOCK RECEIPTS, INVOICES | |

| | | |
|---|---|---|
| **Control #:** | 70 | **Evidence Box:** |
| **Location:** | TRAILER-NW CORNER | **Locator Code:** |
| **Found:** | TRAILER | |
| **Description:** | Seized Per Warrant   CONTROL NO 70<br>DOCK RECEIPTS, INVOICES | |

| | | |
|---|---|---|
| **Control #:** | 71 | **Evidence Box:** |
| **Location:** | TRAILER-NW CORNER | **Locator Code:** |
| **Found:** | TRAILER | |
| **Description:** | Seized Per Warrant   CONTROL NO 71<br>DOCK RECEIPTS, INVOICES | |

| | | |
|---|---|---|
| **Control #:** | 72 | **Evidence Box:** |
| **Location:** | TRAILER-NW CORNER | **Locator Code:** |
| **Found:** | TRAILER | |
| **Description:** | Seized Per Warrant   CONTROL NO 72<br>DOCK RECEIPTS, INVOICES | |

| | | |
|---|---|---|
| **Control #:** | 73 | **Evidence Box:** |
| **Location:** | TRAILER-NW CORNER | **Locator Code:** |
| **Found:** | TRAILER | |
| **Description:** | Seized Per Warrant   CONTROL NO 73<br>DOCK RECEIPTS, INVOICES | |

| | | |
|---|---|---|
| **Control #:** | 74 | **Evidence Box:** |
| **Location:** | TRAILER-NW CORNER | **Locator Code:** |
| **Found:** | TRAILER | |
| **Description:** | Seized Per Warrant   CONTROL NO 74<br>DOCK RECEIPTS, INVOICES | |

| | | |
|---|---|---|
| **Control #:** | 75 | **Evidence Box:** |
| **Location:** | TRAILER-NW CORNER | **Locator Code:** |
| **Found:** | TRAILER | |
| **Description:** | Seized Per Warrant   CONTROL NO 76<br>DOCK RECEIPTS, INVOICES | |

| | | | |
|---|---|---|---|
| **Control #:** | 76 | **Evidence Box:** | |
| **Location:** | TRAILER-NW CORNER | **Locator Code:** | |
| **Found:** | TRAILER | | |
| **Description:** | Seized Per Warrant | CONTROL NO 76 | |
| | | DOCK RECEIPTS, INVOICES | |

| | | | |
|---|---|---|---|
| **Control #:** | 77 | **Evidence Box:** | |
| **Location:** | TRAILER-NW CORNER | **Locator Code:** | |
| **Found:** | TRAILER | | |
| **Description:** | Seized Per Warrant | CONTROL NO 77 | |
| | | DOCK RECEIPTS, INVOICES | |

| | | | |
|---|---|---|---|
| **Control #:** | 78 | **Evidence Box:** | |
| **Location:** | TRAILER-NW CORNER | **Locator Code:** | |
| **Found:** | TRAILER | | |
| **Description:** | Seized Per Warrant | CONTROL NO 78 | |
| | | DOCK RECEIPTS, INVOICES | |

| | | | |
|---|---|---|---|
| **Control #:** | 79 | **Evidence Box:** | |
| **Location:** | TRAILER-NW CORNER | **Locator Code:** | |
| **Found:** | TRAILER | | |
| **Description:** | Seized Per Warrant | CONTROL NO 79 | |
| | | DOCK RECEIPTS, INVOICES | |

| | | | |
|---|---|---|---|
| **Control #:** | 80 | **Evidence Box:** | |
| **Location:** | TRAILER-NW CORNER | **Locator Code:** | |
| **Found:** | TRAILER | | |
| **Description:** | Seized Per Warrant | CONTROL NO 80 | |
| | | DOCK RECEIPTS, INVOICES | |

| | | | |
|---|---|---|---|
| **Control #:** | 81 | **Evidence Box:** | |
| **Location:** | TRAILER-NW CORNER | **Locator Code:** | |
| **Found:** | TRAILER | | |
| **Description:** | Seized Per Warrant | CONTROL NO 81 | |
| | | DOCK RECEIPTS, INVOICES | |

| | | | |
|---|---|---|---|
| **Control #:** | 82 | **Evidence Box:** | |
| **Location:** | TRAILER-NW CORNER | **Locator Code:** | |
| **Found:** | TRAILER | | |
| **Description:** | Seized Per Warrant | CONTROL NO 82 | |
| | | DOCK RECEIPTS, INVOICES | |

| | | | |
|---|---|---|---|
| **Control #:** | 83 | **Evidence Box:** | |
| **Location:** | TRAILER-NW CORNER | **Locator Code:** | |
| **Found:** | TRAILER | | |
| **Description:** | Seized Per Warrant | CONTROL NO 83 | |
| | | DOCK RECEIPTS, INVOICES | |

| | | |
|---|---|---|
| **Control #:** | 84 | **Evidence Box:** |
| **Location:** | TRAILER-NW CORNER | **Locator Code:** |
| **Found:** | TRAILER | |
| **Description:** | Seized Per Warrant   CONTROL NO 84 | |
| | DOCK RECEIPTS, INVOICES | |

| | | |
|---|---|---|
| **Control #:** | 85 | **Evidence Box:** |
| **Location:** | TRAILER-NW CORNER | **Locator Code:** |
| **Found:** | TRAILER | |
| **Description:** | Seized Per Warrant   CONTROL NO 85 | |
| | DOCK RECEIPTS, INVOICES | |

| | | |
|---|---|---|
| **Control #:** | 86 | **Evidence Box:** |
| **Location:** | TRAILER-NW CORNER | **Locator Code:** |
| **Found:** | TRAILER | |
| **Description:** | Seized Per Warrant   CONTROL NO 86 | |
| | DOCK RECEIPTS, INVOICES | |

| | | |
|---|---|---|
| **Control #:** | 87 | **Evidence Box:** |
| **Location:** | TRAILER-NW CORNER | **Locator Code:** |
| **Found:** | TRAILER | |
| **Description:** | Seized Per Warrant   CONTROL NO 87 | |
| | DOCK RECEIPTS, INVOICES | |

| | | |
|---|---|---|
| **Control #:** | 88 | **Evidence Box:** |
| **Location:** | TRAILER-NW CORNER | **Locator Code:** |
| **Found:** | TRAILER | |
| **Description:** | Seized Per Warrant   CONTROL NO 88 | |
| | DOCK RECEIPTS, INVOICES | |

| | | |
|---|---|---|
| **Control #:** | 89 | **Evidence Box:** |
| **Location:** | TRAILER-NW CORNER | **Locator Code:** |
| **Found:** | TRAILER | |
| **Description:** | Seized Per Warrant   CONTROL NO 89 | |
| | DOCK RECEIPTS, INVOICES | |

| | | |
|---|---|---|
| **Control #:** | 90 | **Evidence Box:** |
| **Location:** | TRAILER-NW CORNER | **Locator Code:** |
| **Found:** | TRAILER | |
| **Description:** | Seized Per Warrant   CONTROL NO 90 | |
| | DOCK RECEIPTS, INVOICES | |

| | | |
|---|---|---|
| **Control #:** | 91 | **Evidence Box:** |
| **Location:** | TRAILER-NW CORNER | **Locator Code:** |
| **Found:** | TRAILER | |
| **Description:** | Seized Per Warrant   CONTROL NO 91 | |
| | DOCK RECEIPTS, INVOICES | |

| | | |
|---|---|---|
| **Control #:** | 92 | **Evidence Box:** |
| **Location:** | TRAILER-NW CORNER | **Locator Code:** |
| **Found:** | TRAILER | |
| **Description:** | Seized Per Warrant   CONTROL NO 92 | |
| | DOCK RECEIPTS, INVOICES | |

| | | |
|---|---|---|
| **Control #:** | 93 | **Evidence Box:** |
| **Location:** | TRAILER-NW CORNER | **Locator Code:** |
| **Found:** | TRAILER | |
| **Description:** | Seized Per Warrant   CONTROL NO 93 | |
| | DOCK RECEIPTS, INVOICES | |

| | | |
|---|---|---|
| **Control #:** | 94 | **Evidence Box:** |
| **Location:** | TRAILER-NW CORNER | **Locator Code:** |
| **Found:** | TRAILER | |
| **Description:** | Seized Per Warrant   CONTROL NO 94 | |
| | DOCK RECEIPTS, INVOICES | |

| | | |
|---|---|---|
| **Control #:** | 95 | **Evidence Box:** |
| **Location:** | TRAILER-NW CORNER | **Locator Code:** |
| **Found:** | TRAILER | |
| **Description:** | Seized Per Warrant   CONTROL NO 95 | |
| | DOCK RECEIPTS, INVOICES | |

| | | |
|---|---|---|
| **Control #:** | 96 | **Evidence Box:** |
| **Location:** | TRAILER-NW CORNER | **Locator Code:** |
| **Found:** | TRAILER | |
| **Description:** | Seized Per Warrant   CONTROL NO 96 | |
| | DOCK RECEIPTS, INVOICES | |

| | | |
|---|---|---|
| **Control #:** | 97 | **Evidence Box:** |
| **Location:** | TRAILER-NW CORNER | **Locator Code:** |
| **Found:** | TRAILER | |
| **Description:** | Seized Per Warrant   CONTROL NO 97 | |
| | DOCK RECEIPTS, INVOICES | |

| | | |
|---|---|---|
| **Control #:** | 98 | **Evidence Box:** |
| **Location:** | TRAILER-NW CORNER | **Locator Code:** |
| **Found:** | TRAILER | |
| **Description:** | Seized Per Warrant   CONTROL NO 98 | |
| | DOCK RECEIPTS, INVOICES | |

| | | |
|---|---|---|
| **Control #:** | 99 | **Evidence Box:** |
| **Location:** | TRAILER-NW CORNER | **Locator Code:** |
| **Found:** | TRAILER | |
| **Description:** | Seized Per Warrant   CONTROL NO 99 | |
| | DOCK RECEIPTS, INVOICES | |

| | | | |
|---|---|---|---|
| **Control #:** | 100 | **Evidence Box:** | |
| **Location:** | TRAILER-NW CORNER | **Locator Code:** | |
| **Found:** | TRAILER | | |
| **Description:** | Seized Per Warrant | CONTROL NO 100 | |
| | DOCK RECEIPTS, INVOICES | | |

| | | | |
|---|---|---|---|
| **Control #:** | 101 | **Evidence Box:** | |
| **Location:** | TRAILER-NW CORNER | **Locator Code:** | |
| **Found:** | TRAILER | | |
| **Description:** | Seized Per Warrant | CONTROL NO 101 | |
| | DOCK RECEIPTS, INVOICES | | |

| | | | |
|---|---|---|---|
| **Control #:** | 102 | **Evidence Box:** | |
| **Location:** | TRAILER-NW CORNER | **Locator Code:** | |
| **Found:** | TRAILER | | |
| **Description:** | Seized Per Warrant | CONTROL NO 102 | |
| | DOCK RECEIPTS, INVOICES | | |

| | | | |
|---|---|---|---|
| **Control #:** | 103 | **Evidence Box:** | |
| **Location:** | TRAILER-NW CORNER | **Locator Code:** | |
| **Found:** | TRAILER | | |
| **Description:** | Seized Per Warrant | CONTROL NO 103 | |
| | DOCK RECEIPTS, INVOICES | | |

| | | | |
|---|---|---|---|
| **Control #:** | 104 | **Evidence Box:** | |
| **Location:** | TRAILER-NW CORNER | **Locator Code:** | |
| **Found:** | TRAILER | | |
| **Description:** | Seized Per Warrant | CONTROL NO 104 | |
| | DOCK RECEIPTS, INVOICES | | |

| | | | |
|---|---|---|---|
| **Control #:** | 105 | **Evidence Box:** | |
| **Location:** | TRAILER-NW CORNER | **Locator Code:** | |
| **Found:** | TRAILER | | |
| **Description:** | Seized Per Warrant | CONTROL NO 105 | |
| | DOCK RECEIPTS, INVOICES | | |

| | | | |
|---|---|---|---|
| **Control #:** | 106 | **Evidence Box:** | |
| **Location:** | TRAILER-NW CORNER | **Locator Code:** | |
| **Found:** | TRAILER | | |
| **Description:** | Seized Per Warrant | CONTROL NO 106 | |
| | DOCK RECEIPTS, INVOICES | | |

| | | | |
|---|---|---|---|
| **Control #:** | 107 | **Evidence Box:** | |
| **Location:** | TRAILER-NW CORNER | **Locator Code:** | |
| **Found:** | TRAILER | | |
| **Description:** | Seized Per Warrant | CONTROL NO 107 | |
| | DOCK RECEIPTS, INVOICES | | |

| | | |
|---|---|---|
| **Control #:** | 108 | **Evidence Box:** |
| **Location:** | TRAILER-NW CORNER | **Locator Code:** |
| **Found:** | TRAILER | |
| **Description:** | Seized Per Warrant   CONTROL NO 108 DOCK RECEIPTS, INVOICES | |

| | | |
|---|---|---|
| **Control #:** | 109 | **Evidence Box:** |
| **Location:** | TRAILER-NW CORNER | **Locator Code:** |
| **Found:** | TRAILER | |
| **Description:** | Seized Per Warrant   CONTROL NO 109 DOCK RECEIPTS, INVOICES | |

| | | |
|---|---|---|
| **Control #:** | 110 | **Evidence Box:** |
| **Location:** | TRAILER-NW CORNER | **Locator Code:** |
| **Found:** | TRAILER | |
| **Description:** | Seized Per Warrant   CONTROL NO 110 DOCK RECEIPTS, INVOICES | |

| | | |
|---|---|---|
| **Control #:** | 111 | **Evidence Box:** |
| **Location:** | TRAILER-NW CORNER | **Locator Code:** |
| **Found:** | TRAILER | |
| **Description:** | Seized Per Warrant   CONTROL NO 111 DOCK RECEIPTS, INVOICES | |

| | | |
|---|---|---|
| **Control #:** | 112 | **Evidence Box:** |
| **Location:** | TRAILER-NW CORNER | **Locator Code:** |
| **Found:** | TRAILER | |
| **Description:** | Seized Per Warrant   CONTROL NO 112 DOCK RECEIPTS, INVOICES | |

| | | |
|---|---|---|
| **Control #:** | 113 | **Evidence Box:** |
| **Location:** | TRAILER-NW CORNER | **Locator Code:** |
| **Found:** | TRAILER | |
| **Description:** | Seized Per Warrant   CONTROL NO 113 DOCK RECEIPTS, INVOICES | |

| | | |
|---|---|---|
| **Control #:** | 114 | **Evidence Box:** |
| **Location:** | TRAILER-NW CORNER | **Locator Code:** |
| **Found:** | TRAILER | |
| **Description:** | Seized Per Warrant   CONTROL NO 114 DOCK RECEIPTS, INVOICES | |

| | | |
|---|---|---|
| **Control #:** | 115 | **Evidence Box:** |
| **Location:** | TRAILER-NW CORNER | **Locator Code:** |
| **Found:** | TRAILER | |
| **Description:** | Seized Per Warrant   CONTROL NO 115 DOCK RECEIPTS, INVOICES | |

| Control #: | 116 | | Evidence Box: | |
| Location: | TRAILER-NW CORNER | | Locator Code: | |
| Found: | TRAILER | | | |
| Description: | Seized Per Warrant | CONTROL NO 116 | | |
| | | DOCK RECEIPTS, INVOICES | | |

| Control #: | 117 | | Evidence Box: | |
| Location: | TRAILER-NW CORNER | | Locator Code: | |
| Found: | TRAILER | | | |
| Description: | Seized Per Warrant | CONTROL NO 117 | | |
| | | DOCK RECEIPTS, INVOICES | | |

| Control #: | 118 | | Evidence Box: | |
| Location: | TRAILER-NW CORNER | | Locator Code: | |
| Found: | TRAILER | | | |
| Description: | Seized Per Warrant | CONTROL NO 118 | | |
| | | DOCK RECEIPTS, INVOICES | | |

| Control #: | 119 | | Evidence Box: | |
| Location: | TRAILER-NW CORNER | | Locator Code: | |
| Found: | TRAILER | | | |
| Description: | Seized Per Warrant | CONTROL NO 119 | | |
| | | DOCK RECEIPTS, INVOICES | | |

| Control #: | 120 | | Evidence Box: | |
| Location: | TRAILER-NW CORNER | | Locator Code: | |
| Found: | TRAILER | | | |
| Description: | Seized Per Warrant | CONTROL NO 120 | | |
| | | DOCK RECEIPTS, INVOICES | | |

| Control #: | 121 | | Evidence Box: | |
| Location: | TRAILER-NW CORNER | | Locator Code: | |
| Found: | TRAILER | | | |
| Description: | Seized Per Warrant | CONTROL NO 121 | | |
| | | DOCK RECEIPTS, INVOICES | | |

| Control #: | 122 | | Evidence Box: | |
| Location: | TRAILER-NW CORNER | | Locator Code: | |
| Found: | TRAILER | | | |
| Description: | Seized Per Warrant | CONTROL NO 122. | | |
| | | DOCK RECEIPTS, INVOICES | | |

| Control #: | 123 | | Evidence Box: | |
| Location: | TRAILER-NW CORNER | | Locator Code: | |
| Found: | TRAILER | | | |
| Description: | Seized Per Warrant | CONTROL NO 123 | | |
| | | DOCK RECEIPTS, INVOICES | | |

| **Control #:** | 124 | | **Evidence Box:** | |
| **Location:** | TRAILER-NW CORNER | | **Locator Code:** | |
| **Found:** | TRAILER | | | |
| **Description:** | Seized Per Warrant | CONTROL NO 124 | | |
| | | DOCK RECEIPTS, INVOICES | | |

| **Control #:** | 125 | | **Evidence Box:** | |
| **Location:** | TRAILER-NW CORNER | | **Locator Code:** | |
| **Found:** | TRAILER | | | |
| **Description:** | Seized Per Warrant | CONTROL NO 125 | | |
| | | DOCK RECEIPTS, INVOICES | | |

| **Control #:** | 126 | | **Evidence Box:** | |
| **Location:** | TRAILER-NW CORNER | | **Locator Code:** | |
| **Found:** | TRAILER | | | |
| **Description:** | Seized Per Warrant | CONTROL NO 126 | | |
| | | DOCK RECEIPTS, INVOICES | | |

| **Control #:** | 127 | | **Evidence Box:** | |
| **Location:** | TRAILER-NW CORNER | | **Locator Code:** | |
| **Found:** | TRAILER | | | |
| **Description:** | Seized Per Warrant | CONTROL NO 127 | | |
| | | DOCK RECEIPTS, INVOICES | | |

| **Control #:** | 128 | | **Evidence Box:** | |
| **Location:** | TRAILER-NW CORNER | | **Locator Code:** | |
| **Found:** | TRAILER | | | |
| **Description:** | Seized Per Warrant | CONTROL NO 128 | | |
| | | DOCK RECEIPTS, INVOICES | | |

| **Control #:** | 129 | | **Evidence Box:** | |
| **Location:** | TRAILER-NW CORNER | | **Locator Code:** | |
| **Found:** | TRAILER | | | |
| **Description:** | Seized Per Warrant | CONTROL NO 129 | | |
| | | DOCK RECEIPTS, INVOICES | | |

| **Control #:** | 130 | | **Evidence Box:** | |
| **Location:** | TRAILER-NW CORNER | | **Locator Code:** | |
| **Found:** | TRAILER | | | |
| **Description:** | Seized Per Warrant | CONTROL NO 130 | | |
| | | DOCK RECEIPTS, INVOICES | | |

| **Control #:** | 131 | | **Evidence Box:** | |
| **Location:** | TRAILER-NW CORNER | | **Locator Code:** | |
| **Found:** | TRAILER | | | |
| **Description:** | Seized Per Warrant | CONTROL NO 131 | | |
| | | DOCK RECEIPTS, INVOICES | | |

| | | | |
|---|---|---|---|
| **Control #:** | 132 | **Evidence Box:** | |
| **Location:** | TRAILER-NW CORNER | **Locator Code:** | |
| **Found:** | TRAILER | | |
| **Description:** | Seized Per Warrant | CONTROL NO 132 | |
| | | DOCK RECEIPTS, INVOICES | |

| | | | |
|---|---|---|---|
| **Control #:** | 133 | **Evidence Box:** | |
| **Location:** | TRAILER-NW CORNER | **Locator Code:** | |
| **Found:** | TRAILER | | |
| **Description:** | Seized Per Warrant | CONTROL NO 133 | |
| | | DOCK RECEIPTS, INVOICES | |

| | | | |
|---|---|---|---|
| **Control #:** | 134 | **Evidence Box:** | |
| **Location:** | TRAILER-NW CORNER | **Locator Code:** | |
| **Found:** | TRAILER | | |
| **Description:** | Seized Per Warrant | CONTROL NO 134 | |
| | | DOCK RECEIPTS, INVOICES | |

| | | | |
|---|---|---|---|
| **Control #:** | 135 | **Evidence Box:** | |
| **Location:** | TRAILER-NW CORNER | **Locator Code:** | |
| **Found:** | TRAILER | | |
| **Description:** | Seized Per Warrant | CONTROL NO 135 | |
| | | DOCK RECEIPTS, INVOICES | |

| | | | |
|---|---|---|---|
| **Control #:** | 136 | **Evidence Box:** | |
| **Location:** | TRAILER-NW CORNER | **Locator Code:** | |
| **Found:** | TRAILER | | |
| **Description:** | Seized Per Warrant | CONTROL NO 136 | |
| | | DOCK RECEIPTS, INVOICES | |

| | | | |
|---|---|---|---|
| **Control #:** | 137 | **Evidence Box:** | |
| **Location:** | TRAILER-NW CORNER | **Locator Code:** | |
| **Found:** | TRAILER | | |
| **Description:** | Seized Per Warrant | CONTROL NO 137 | |
| | | DOCK RECEIPTS, INVOICES | |

| | | | |
|---|---|---|---|
| **Control #:** | 138 | **Evidence Box:** | |
| **Location:** | TRAILER-NW CORNER | **Locator Code:** | |
| **Found:** | TRAILER | | |
| **Description:** | Seized Per Warrant | CONTROL NO 138 | |
| | | DOCK RECEIPTS, INVOICES | |

| | | | |
|---|---|---|---|
| **Control #:** | 139 | **Evidence Box:** | |
| **Location:** | TRAILER-NW CORNER | **Locator Code:** | |
| **Found:** | TRAILER | | |
| **Description:** | Seized Per Warrant | CONTROL NO 139 | |
| | | DOCK RECEIPTS, INVOICES | |

| | | | |
|---|---|---|---|
| **Control #:** | 140 | **Evidence Box:** | |
| **Location:** | TRAILER-NW CORNER | **Locator Code:** | |
| **Found:** | TRAILER | | |
| **Description:** | Seized Per Warrant | CONTROL NO 140 | |
| | | DOCK RECEIPTS, INVOICES | |

| | | | |
|---|---|---|---|
| **Control #:** | 141 | **Evidence Box:** | |
| **Location:** | TRAILER-NW CORNER | **Locator Code:** | |
| **Found:** | TRAILER | | |
| **Description:** | Seized Per Warrant | CONTROL NO 141 | |
| | | DOCK RECEIPTS, INVOICES | |

| | | | |
|---|---|---|---|
| **Control #:** | 142 | **Evidence Box:** | |
| **Location:** | TRAILER-NW CORNER | **Locator Code:** | |
| **Found:** | TRAILER | | |
| **Description:** | Seized Per Warrant | CONTROL NO 142 | |
| | | DOCK RECEIPTS, INVOICES | |

| | | | |
|---|---|---|---|
| **Control #:** | 143 | **Evidence Box:** | |
| **Location:** | TRAILER-NW CORNER | **Locator Code:** | |
| **Found:** | TRAILER | | |
| **Description:** | Seized Per Warrant | CONTROL NO 143 | |
| | | DOCK RECEIPTS, INVOICES | |

| | | | |
|---|---|---|---|
| **Control #:** | 144 | **Evidence Box:** | |
| **Location:** | TRAILER-NW CORNER | **Locator Code:** | |
| **Found:** | TRAILER | | |
| **Description:** | Seized Per Warrant | CONTROL NO 144 | |
| | | DOCK RECEIPTS, INVOICES | |

| | | | |
|---|---|---|---|
| **Control #:** | 145 | **Evidence Box:** | |
| **Location:** | TRAILER-NW CORNER | **Locator Code:** | |
| **Found:** | TRAILER | | |
| **Description:** | Seized Per Warrant | CONTROL NO 145 | |
| | | DOCK RECEIPTS, INVOICES | |

| | | | |
|---|---|---|---|
| **Control #:** | 146 | **Evidence Box:** | |
| **Location:** | KAIN OFFICE | **Locator Code:** | |
| | KAIN OF | | |
| **Found:** | C-1 | | |
| **Description:** | Seized Per Warrant | CONTROL NO 146 | |
| | | BANK BUS CARD, INVOICE, BANK ST, NY LIFE INS ST, | |
| | | MASS MUTUAL LIFE INS , LEVEL ONE BANK ST, SBA | |
| | | LOANS INFO, TCF LOAN ST | |

| | | | |
|---|---|---|---|
| **Control #:** | 147 | **Evidence Box:** | |
| **Location:** | TRAILER-NW CORNER | **Locator Code:** | J |
| **Found:** | TRAILER | | |
| **Description:** | Seized Per Warrant | CONTROL NO 147 | |
| | | DOCK RECEIPTS, INVOICES | |

| | | | |
|---|---|---|---|
| **Control #:** | 148 | **Evidence Box:** | |
| **Location:** | | **Locator Code:** | |
| **Found:** | | | |
| **Description:** | | Not Used | |

| | | | |
|---|---|---|---|
| **Control #:** | 149 | **Evidence Box:** | |
| **Location:** | SERVER ROOM | **Locator Code:** | B |
| **Found:** | SERVER ROOM | | |
| **Description:** | Seized Per Warrant | CONTROL 149 | |
| | | EMPOWER DVR 6G015C0PAZ097D9 | |

| | | | |
|---|---|---|---|
| **Control #:** | 150 | **Evidence Box:** | |
| **Location:** | SERVER ROOM | **Locator Code:** | B |
| **Found:** | SERVER ROOM | | |
| **Description:** | Seized Per Warrant | WESTERN DIGITAL MYBOOK | |
| | | SERIAL # WCC4E7XHET5H | |

| | | | |
|---|---|---|---|
| **Control #:** | 151 | **Evidence Box:** | |
| **Location:** | SERVER ROOM | **Locator Code:** | B |
| **Found:** | SERVER ROOM | | |
| **Description:** | Seized Per Warrant | CONTROL NO 151 | |
| | | DELL POWER VAULT   SERIAL 46C1968YL102233B794 | |

| | | | |
|---|---|---|---|
| **Control #:** | 152 | **Evidence Box:** | |
| **Location:** | MAIN OFFICE | **Locator Code:** | A |
| **Found:** | MAIN OFFICE | | |
| **Description:** | Seized Per Warrant | CONTROL NO 152 | |
| | | LOGICAL COPIES OF WORKSTATION FILES | |

| | | | |
|---|---|---|---|
| **Control #:** | 153 | **Evidence Box:** | |
| **Location:** | SERVER ROOM | **Locator Code:** | B |
| **Found:** | SERVER ROOM | | |
| **Description:** | Seized Per Warrant | CONTROL NO 153 | |
| | | LOGICAL COPY OF SERVER FILES | |

| | | | |
|---|---|---|---|
| **Control #:** | 154 | **Evidence Box:** | |
| **Location:** | KAIN OFFICE | **Locator Code:** | C |
| | KAIN OF | | |
| **Found:** | ON DESK | | |
| **Description:** | Seized Per Warrant | CONTROL NO 154 | |
| | | DELL DESKTOP SERIAL 5GBFQ53 | |

| | | | |
|---|---|---|---|
| **Control #:** | 155 | **Evidence Box:** | |
| **Location:** | SERVER ROOM | **Locator Code:** | B |
| **Found:** | SERVER ROOM | | |
| **Description:** | Seized Per Warrant | CONTROL NO 155 | |
| | | IMAGE OF DELL POWEREDGE SERIAL 588VGX1 DRIVE 1 | |

| | | | |
|---|---|---|---|
| **Control #:** | 156 | **Evidence Box:** | |
| **Location:** | SERVER ROOM | **Locator Code:** | B |
| **Found:** | SERVER ROOM | | |
| **Description:** | Seized Per Warrant | CONTROL NO 156 | |
| | | IMAGE OF DELL POWEREDGE SERIAL 588VGX1 DRIVE 2 | |

| | | | |
|---|---|---|---|
| **Control #:** | 157 | **Evidence Box:** | |
| **Location:** | SERVER ROOM | **Locator Code:** | B |
| **Found:** | SERVER ROOM | | |
| **Description:** | Seized Per Warrant | CONTROL NO 157 | |
| | | IMAGE OF DELL POWEREDGE SERIAL 588VGX1 DRIVE 3 | |

USAO File Number: 2018R00729     AUSA: Frank Moon     Telephone: (313) 226-9100

AO 93 (Rev. 11/13) Search and Seizure Warrant     Special Agent: Jessica Knickerbocker     Telephone: (313) 965-2323

# UNITED STATES DISTRICT COURT
for the
Eastern District of Michigan

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>6425 Tireman Street, Detroit, MI 48204, and 16332<br>Horseshoe Drive, Northville, MI 48168, more fully<br>described in Attachments A-1 and A-2. | ) ) ) ) ) ) )  Case No.  19-mc-50186-5 |

## SEARCH AND SEIZURE WARRANT

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____ Eastern _____ District of _____ Michigan _____ .
*(identify the person or describe the property to be searched and give its location)*:

See ATTACHMENTs A-1 and A-2.

> I hereby certify that the foregoing is a certified copy of the original on file in this office.
>
> **Clerk, U.S. District Court**
> **Eastern District of Michigan**
>
> By:  *s/Michael Williams*
>      Deputy

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See ATTACHMENT B, violations of:

26 U.S.C. § 7206, fraud and false statements
18 U.S.C. § 542, entry of goods by means of false statements

**YOU ARE COMMANDED** to execute this warrant on or before     October 26, 2021 _____     *(not to exceed 14 days)*

☑ in the daytime 6:00 a.m. to 10:00 p.m.     ☐ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to  the presiding United States Magistrate Judge on duty  .
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*

☐ for _____ days *(not to exceed 30)* ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued:     October 12, 2021   5:20 pm _____

_____
*Judge's signature*

City and state:     Detroit, Michigan _____     Anthony P. Patti     U. S. Magistrate Judge
_____
*Printed name and title*

## <u>ATTACHMENT A-2</u>

## DESCRIPTION OF THE PREMISES TO BE SEARCHED
## SUBJECT PREMISES 2

The property to be searched is residence located at 16332 Horseshoe Drive, Northville, MI 48168, belonging to Ali Kain and Mariam Beydoun. The residence has the numbers "16332" within on the brick located on the front of the home towards the east side of the residence by the garage. There is a three-car attached garage with side entrances on the east side of the home. The residence has a circle driveway.





AO 93  (Rev. 11/13) Search and Seizure Warrant (Page 2)

| Return | | |
|---|---|---|
| Case No.:<br>19-mc-50186-5 | Date and time warrant executed:<br>October 13, 2021 635am | Copy of warrant and inventory left with:<br>Ali Kain |
| Inventory made in the presence of :<br>S/A Jacob Piazza | | |
| Inventory of the property taken and name of any person(s) seized: See Attached Inventory listing<br>of All Items Seized | | |

## Certification

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: 10/13/2021

_Executing officer's signature_

Jessica Knickerbocker, Special Agent
_Printed name and title_

# Inventory Listing of All Items Seized at Search Warrant Site

| **Site Name:** | **Investigation Number:** | **Report Date:** |
|---|---|---|
| Ali Kain | 1000294700 | Wednesday, October 13, |
| | **Starting Date and Time:** | 2021 |
| 16332 Horseshoe Drive | 10/13/2021 06:35 AM | |
| Northville, MI 48168 | **Ending Date and Time:** | |
| | 10/13/2021 11:30 AM | |

---

| **Control #:** | 1 | **Evidence Box:** | 1 |
|---|---|---|---|
| **Location:** | Garage | **Locator Code:** | G |
| | Garage | | |
| **Found:** | Plug in on couch | | |
| **Description:** | Seized per Warrant | Ali's I-Phone - Black Phone in Gold/Clear case unknown serial number. | |

---

| **Control #:** | 2 | **Evidence Box:** | 1 |
|---|---|---|---|
| **Location:** | Girl Bedrom w/gray | **Locator Code:** | V |
| **Found:** | Items found on dresser in closet & on bkshelf | | |
| **Description:** | Seized per Warrant | Postal Money Order, Western Union, E-mail - (SOS payroll info), BMW - World Of Erhard, Jaguar Land Rover Farmington Hills, Chec #1035, Paper Tower #0405328360 | |

---

| **Control #:** | 3 | **Evidence Box:** | 1 |
|---|---|---|---|
| **Location:** | Girl Bedrm w/2 pink | **Locator Code:** | T |
| **Found:** | Items Found Near Make up area | | |
| **Description:** | Seized per Warrant | Jaguar Financial Mail, PNC Bank Envelope, Sam Club Receipt, | |

---

| **Control #:** | 4 | **Evidence Box:** | 1 |
|---|---|---|---|
| **Location:** | Garage | **Locator Code:** | G |
| | Garage | | |
| **Found:** | on Top of the Refrigerator | | |
| **Description:** | Seized per Warrant | Dell Inspiron Laptop S/N DJCJMK2 with Power Cord | |

---

| **Control #:** | 5 | **Evidence Box:** | 1 |
|---|---|---|---|
| **Location:** | Master Bedroom | **Locator Code:** | O |
| **Found:** | Bedroom Wardrobe | | |
| **Description:** | Seized per Warrant | Comestic Surgery Invoices/receipts | |

---

| **Control #:** | 6 | **Evidence Box:** | 1 |
|---|---|---|---|
| **Location:** | Master Bedroom | **Locator Code:** | O |
| **Found:** | Portable Safe found near wardrobe | | |
| **Description:** | Seized per Warrant | Comerica Bank Safety Deposit Box Lease agreement, Comerica Bank Documents | |

---

| | | | |
|---|---|---|---|
| **Control #:** | 7 | **Evidence Box:** | 1 |
| **Location:** | Master Bedroom | **Locator Code:** | O |
| **Found:** | Bedroom Left Nightstand Top Drawer | | |
| **Description:** | Seized per Warrant | Chase Bank Account Documents, DFCU Bank Account Documents | |

| | | | |
|---|---|---|---|
| **Control #:** | 8 | **Evidence Box:** | 1 |
| **Location:** | Master Bedroom | **Locator Code:** | O |
| **Found:** | Dresser with Mirror | | |
| **Description:** | Seized per Warrant | Chase Bank Documents and CD | |

| | | | |
|---|---|---|---|
| **Control #:** | 9 | **Evidence Box:** | 1 |
| **Location:** | Master Bedroom | **Locator Code:** | O |
| **Found:** | Large Dresser by entrance | | |
| **Description:** | Seized per Warrant | Bank records and auto insurance information | |

| | | | |
|---|---|---|---|
| **Control #:** | 10 | **Evidence Box:** | 1 |
| **Location:** | Boy Bedroom | **Locator Code:** | U |
| **Found:** | Top of Dresser | | |
| **Description:** | Seized per Warrant | Neimus Marcus Reeipts, Saks Fifth Avenue Receipts, Nordstrom receipts, Eden Receipts, Amercian Express receipts | |

| | | | |
|---|---|---|---|
| **Control #:** | 11 | **Evidence Box:** | 1 |
| **Location:** | Laundry/Closet | **Locator Code:** | f |
| **Found:** | Inside teh cabinets | | |
| **Description:** | Seized per Warrant | Receipts for home improvements goods, Bank receipt from chemical bank, statement of unauthorized debits. coemrica bank Lillan kain. | |

| | | | |
|---|---|---|---|
| **Control #:** | 12 | **Evidence Box:** | 1 |
| **Location:** | Garage Garage | **Locator Code:** | G |
| **Found:** | Drawer Cabinet in Garage | | |
| **Description:** | Seized per Warrant | Bank Statements and information | |

| | | | |
|---|---|---|---|
| **Control #:** | 13 | **Evidence Box:** | 1 |
| **Location:** | Laundry/Closet | **Locator Code:** | F |
| **Found:** | Brief Case | | |
| **Description:** | Seized per Warrant | Business Records, Personal and Business Financial Activity | |

## ATTACHMENT B

### DESCRIPTION OF ITEMS TO BE SEIZED AND SEARCHED

1.      All items that constitute evidence, fruits, or instrumentalities of violations of Title 26 U.S.C. § 7206 (fraud and false statements), Title 26 U.S.C. § 7202 (failure to collect and pay tax), Title 18 U.S.C. § 542 (entry of goods by means of false statements), Title 21 U.S.C. § 1906 (Foreign Narcotics Kingpin Designation Act), and Title 50 U.S.C. § 1705 (IEEPA) from the period January 1, 2006, to October 13, 2021, including but not limited to:

   a.  Records and information related to the purchase and sale of vehicles including titles, bills of sale (RD-108), odometer statements, invoices, financing agreements, checks, money orders, wire transfers and sales tax records.

   b.  Records and information relating to the shipment of vehicles including bills of lading, export declarations, customs forms, dock receipts, and shipping invoices.

   c.  Records and information relating to any communications between or involving the persons named in this warrant including letters, phone messages, voice mail, e-mail, or other electronic communications.

   d.  Records and information relating to any communications and/or

transactions with any U.S. Department of Treasury designated individuals or entities and/or any individuals or entities associated with Hezbollah.

e. Evidence indicating the state of mind of Ali Kain as it relates to the crimes under investigation, including evidence demonstrating that he had knowledge that he was engaging in conduct that was unlawful, or that he was acting in disregard of legal obligations.

f. All financial documents, including:

   i. Any and all ledgers, journals, balance sheets, income statements, invoices, account books, records, billing statements, client/customer lists, calendars/digests, employee time records, payroll records, appointment books, vendor lists, checks, checkbooks, receipts, bills, phone recordings, contracts, leases, correspondence, cash register receipts, insurance summaries, insurance records and other business/financial records of Ali Kain, Mariam Beydoun, Specialized Overseas Shipping (doing business as SOS), SOS Transportation, Inc., and SOS Realty, LLC.  Any and all records utilized to document business financials to including any QuickBooks software database or program used to record such information.

   ii. Any and all personal and business bank records including bank statements, cancelled checks, check registers, deposit tickets, debit and credit memos, checks deposited, withdrawal slips, and checks issued for withdrawals. All records and documents identifying the locations of safety deposit boxes including safety deposit keys, or other possible depositories for cash and other liquid assets which are identified in any way with Ali Kain, Mariam Beydoun, Specialized Overseas Shipping (doing business as SOS), SOS Transportation, Inc., and SOS Realty, LLC.

2

    iii.   Loan and/or mortgage records including applications; financial statements; loan agreements; loan contracts; checks issued for loans; repayment records including records revealing the date; amount, and method of repayment (cash or check); checks used to repay loans; promissory notes; amortization schedules; forbearance agreements; escrow agreements; correspondence between lending institutions and Ali Kain, Mariam Beydoun, Specialized Overseas Shipping (doing business as SOS), SOS Transportation, Inc., and SOS Realty, LLC.

    iv.   Personal and business credit card records, including: applications; monthly billing statements; individual charge invoices; repayment records disclosing the dates, amounts, and method of repayment (cash or check); and cancelled checks used to make repayments.

    v.   Any and all records used to maintain payroll information including a software database used to record an maintain such information sold under the name "Finger Tec."

    vi.   Any and all tax returns, tax information, tax schedules, copies of tax returns, and information returns of Ali Kain, Mariam Beydoun, Specialized Overseas Shipping (doing business as SOS), SOS Transportation, Inc., and SOS Realty, LLC. Also all retained copies of state and federal income or other tax returns, including Forms 1040, 1120, 1065, 1099, 940, 941, W-2, Schedules K-1 and supporting work papers, attachments, and summary sheets.

2.   <u>Electronically stored information</u>: The above identified information and/or data may be stored in the form of magnetic or electronic coding on computer media, or on media capable of being read by a computer or with the aid of a computer related equipment. This media includes but is not limited to any magnetic or electronic storage device such as floppy diskettes, hard disks, backup tapes, CD-ROMs, optical discs, printer buffers, smart cards, memory calculators,

3

electronic dialers, Bernoulli drives, electronic notebooks, cellular telephones/

Smartphones (Ali Kassem Kain's only). In searching for data capable of being

read, stored or interpreted by a computer, law enforcement personnel executing

this search warrant will employ the following procedure:

a. Upon securing the premises, law enforcement personnel trained in
searching and seizing computer data (the "computer personnel") will
make an initial review of any computer equipment and storage devices
to determine whether or not these items can be searched on-site in a
reasonable amount of time and without jeopardizing the ability to
preserve the data.

b. If the computer equipment and storage devices cannot be searched on-
site in a reasonable amount of time and without jeopardizing the
preservation of the data, then the computer personnel will determine
whether it is practical to copy/image the data.

c. If the computer personnel determine it is not practical to perform an
on-site searching, copying or imaging (due to time, technical or other
considerations), then the computer equipment and storage devices will
be seized and transported to an appropriate law enforcement
laboratory for review. The computer equipment and storage devices
will be reviewed by appropriately trained personnel in order to extract

4

and seize any data that falls within the list of items to be seized set forth herein.

d. Any data that is encrypted and unreadable will not be returned unless law enforcement personnel have determined that the data is not (1) an instrumentality of the offense, (2) a fruit of the criminal activity, (3) contraband, (4) otherwise unlawfully possessed, or (5) any data that falls within the list of items to be seized set forth within.

e. In searching the data, computer personnel may examine all of the data contained in the computer equipment and storage devices to view their precise contents and determine whether the data falls within the items to be seized as set forth herein.

f. If the computer personnel determine that the computer equipment and storage devices are no longer necessary to retrieve and preserve the data, and the items are not subject to seizure pursuant to Federal Rule of Criminal Procedure 41(b), the government will return these items within a reasonable period of time.

g. In order to search for data that is capable of being read or interpreted by a computer, law enforcement personnel will need to seize and search the following items, subject to the procedures set forth above:

- Any computer equipment and storage devices capable of being used to commit or store evidence of the offenses listed above;

- Any computer equipment used to facilitate the transmission, creation, display, encoding or storage of data, including but not limited to word processing equipment, modems, docking stations, monitors, printers, plotters, encryption devices, and optical scanners;

- Any magnetic, electric or optical storage device capable of storing data such as floppy disks, hard disk tapes, CD-ROMs, CD-Rs, CD-RWs, DVDs, optical disks, printer or memory buffers, smart cards, PC cards, memory calculators, electronic dialers, electronic notebooks, USB flash memory devices, personal digital assistants, mobile telephones or answering machines;

- Any documentation, operating logs and reference manuals regarding the operation of the computer equipment, storage devices, or software;

- Any applications, utility programs, compliers, interpreters, and other software used to facilitate direct or indirect communication with the computer hardware, storage devices or data to be searched;

- Any physical keys, encryption devices and similar physical items that are necessary to gain access to the computer equipment, storage devices or data; and

- Any passwords, password files, test keys, encryption codes, or other information necessary to access the computer equipment, storage devices or data.

3.     For any computer or storage medium whose seizure is otherwise authorized by this warrant, and any computer or storage medium that contains or in which is stored records or information that is otherwise called for by this warrant (hereinafter, "COMPUTER"):

a.  Evidence of who used, owned, or controlled the COMPUTER at the

time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondence.

b. Evidence of software (or the lack thereof) that would allow others to control the COMPUTER, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software.

c. Evidence indicating how and when the computer was accessed or used to determine the chronological context of computer access, use, and events relating to crime under investigation and to the computer user.

d. Evidence indicating the computer user's state of mind as it relates to the crime under investigation.

e. Evidence of the attachment to the COMPUTER of other storage devices or similar containers for electronic evidence.

f. Evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the COMPUTER.

g. Evidence of the times the COMPUTER was used.

h. Passwords, encryption keys, and other access devices that may be

necessary to access the COMPUTER.

   i.   Documentation and manuals that may be necessary to access the COMPUTER or to conduct a forensic examination of the COMPUTER.

   j.   Records of or information about Internet Protocol addresses used by the COMPUTER.

   k.   Records of or information about the COMPUTER's Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

   l.   Contextual information necessary to understand the evidence described in this attachment.

The term "computer" includes all types of electronic, magnetic, optical, electrochemical, or other high speed data processing devices performing logical, arithmetic, or storage functions, including desktop computers, notebook computers, mobile phones, tablets, server computers, and network hardware.

The term "storage medium" includes any physical object upon which computer data can be recorded. Examples include hard disks, RAM, floppy disks, flash memory, CD-ROMs, and other magnetic or optical media.

This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

USAO File Number: 2018R00729    AUSA: Jerome Gorgon    Telephone: (313) 226-9100
Special Agent: Jessica Knickerbocker    Telephone: (313) 965-2323

AO 93 (Rev. 11/13) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT
### for the
Eastern District of Michigan

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched* | ) |
| *or identify the person by name and address)* | ) Case No.  19-mc-50186-6 |
| Records Seized During October 13, 2021 Search Warrant, | ) |
| More Fully Described In Attachment A. | ) |
| | ) |

## SEARCH AND SEIZURE WARRANT

To:    Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____ Eastern _____ District of _____ Michigan _____ .
*(identify the person or describe the property to be searched and give its location)*:

See ATTACHMENT A.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See ATTACHMENT B, violations of:

26 U.S.C. § 7206, fraud and false statements
18 U.S.C. § 542, entry of goods by means of false statements

**YOU ARE COMMANDED** to execute this warrant on or before    Septmeber 14, 2023 _____ *(not to exceed 14 days)*

☑ in the daytime 6:00 a.m. to 10:00 p.m.    ☐ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to    the presiding United States Magistrate Judge on duty _____ .
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)*    ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued:    August 31, 2023    11:59 am    _____
                                                                          *Judge's signature*

City and state:    Detroit, Michigan    _____    David R. Grand    U. S. Magistrate Judge
                                                                                        *Printed name and title*

AO 93  (Rev. 11/13) Search and Seizure Warrant (Page 2)

| Return | | |
|---|---|---|
| Case No.:<br>19-mc-50186-6 | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of : | | |
| Inventory of the property taken and name of any person(s) seized: | | |

## Certification

       I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.


Date: _____

_____

*Executing officer's signature*

_____

*Printed name and title*